(Decided 18th March, 1890.)

WILLIAM L. MARBURY, Trustee *vs.* JOHN F. EHLEN, and others, Administrators, THE MAYOR AND CITY COUNCIL OF BALTIMORE, and the BALTIMORE FIRE INSURANCE COMPANY.

*Corporations—Transfer of Stock standing in Name of Trustee—Notice—Breach of Trust—Measure of Liability—Subrogation.*

By the will of J. H. E. dated the 18th of November, 1850, a trust was created for the one-eighth part of the testator's estate, in the hands of J. F. E. as trustee, to continue during his life, for the benefit of such children as he then had or might thereafter have. Under a decree for a partition of the property of the testator, said one-eighth part thereof was awarded to J. F. E. as trustee as above mentioned. Part of the share thus awarded consisted of Baltimore City stock, and certain shares of the stock of the F. I. Insurance Co., standing in the name of the testator. On the 5th day of April, 1878, the said Baltimore City stock was transferred by said executors on the books of the Register's office of Baltimore City to J. F. E. "trustee," and on the 8th day of the same month said stock was transferred on the city's books by

J. F. E. "trustee," to F. E., said last transfer being made without an order of Court, and without the sanction of the will of the testator. On the 11th of January, 1865, the shares of the stock of said insurance company were transferred by the executors on the books of the company to themselves as trustees, and on the 20th of July, 1878, a portion of said shares were transferred by them as "trustees" to J. F. E. "trustee," who on the 22nd of January, 1879, transferred them to F. E. On a bill filed by a trustee appointed in the place of J. F. E. against the Mayor and City Council of Baltimore, and said insurance company, asking that they be required to made good the stocks so transferred, it was HELD:

1st. That the assignment of the city stock made by the executors to J. F. E. trustee, and by him to F. E., were so nearly contemporaneous that it would be unreasonable to hold that the city was not affected with knowledge of the source of J. F. E's title as trustee, which the city's officers had only approved three days before, and that such knowledge made it liable to make good the stock so illegally transferred to F. E.

2nd. That notwithstanding the length of time which had elapsed from the change of the stock on the books of the insurance company from the testator's name to the executors as trustees, before the change from them as trustees to J. F. E. as trustee, the history of the transaction was before the company, which had notice by its books that the stock was originally the property of a person who had made a will; and being once informed of the will and its provisions affecting that stock, that knowledge continued all the way down, and the company was bound to see that the trust property in its custody was protected, and was not misappropriated.

3rd. That having failed to do its duty, and allowed the stock to be improperly assigned away and wasted, which could not have been done without its co-operation, the company was bound to make good the loss.

All the *cestuis que trust*, except B. E., an infant, having assigned their interests to the trustee J. F. E., who was their father, and ratified his acts as trustee, it was HELD:

1st. That the trust, by the will, being constituted for the benefit of the children of J. F. E., then living or that might thereafter be born, it could not be assumed that other children might not come into being who would be entitled to share in the fund.

2nd. That until the death of J. F. E., the fund must remain undivided, but on his death the defendants would be entitled to have restored to them by subrogation, such shares thereof as would not belong to B. E. or other children who might possibly become participants in the trust, but not now in being.

3rd. That in the division, the infant, B. E., was not entitled to be allowed her share of the whole trust fund out of the portion of it involved in this case, as that would be making the defendants bear the consequences of breaches of trust as to other portions of the trust property, in which they had no participation.

Where stock, standing on the books of a corporation in the name of a testator, is transferred on its books by the executor to a trustee under the will, such transfer by the executor furnishes notice to the corporation of the will and of the trust thereby created.

The fact that the transferree is merely designated as "trustee" without any specification of the trust, will not relieve the corporation from the duty of inspecting the will, and protecting the trust property in its hands from misappropriation by the trustee.

Being once informed of the will and its provisions affecting the stock, that knowledge continues all the way down, and renders the corporation liable for any subsequent transfer made by the trustee without authority.

APPEAL from the Circuit Court of Baltimore City.

The case is stated in the opinion of the Court. The following admission of facts was filed in the case: "It is agreed in this case, that the stock transfer books of the Baltimore Fire Insurance Company, would show the following minutes of stock transfers, viz.,

"January 11, 1865.—416 shares in name of John H. Ehlen, transferred by John F. Ehlen, and Benj. F. Newcomer, executors, to John F. Ehlen, and B. F. Newcomer, trustees.

"July 20, 1878.—52 shares by John F. Ehlen, and B. F. Newcomer, trustees, to John F. Ehlen, trustee.

"January 22, 1879.—52 shares by John F. Ehlen, trustee, to Frank Ehlen."

"Others of the 416 shares transferred to other parties."

The cause was argued before ROBINSON, IRVING, BRYAN, FOWLER, and MCSHERRY, J.

*Wm. L. Marbury*, and *Alexander H. Robertson*, for the appellant.

*Wm. Pinkney Whyte, Attorney-General*, for the appellee, the Baltimore Fire Insurance Company.

*Bernard Carter*, for the appellee, the Mayor and City Council of Baltimore, filed a brief.

IRVING, J., delivered the opinion of the Court.

By the decision of this Court, in *Ehlen vs. Ehlen*, 63 *Md.*, 273, it was adjudged, that, by the will of John H. Ehlen, dated the 18th of November, 1850, a trust was created for the one-eighth part of the testator's estate, in the hands of John F. Ehlen, as trustee, to continue during his life for the benefit of such children as he then had or might thereafter have. It was also decided, in that case, that John F. Ehlen had committed a breach of trust in disposing of the trust property and converting the same to his own use, and the decree of the lower Court, removing him from his trusteeship and appointing the present appellant trustee in his stead, was approved and affirmed.

By bill in equity, the appellant, (the present trustee,) seeks to recover from Frank Ehlen, "The Baltimore Fire Insurance Company" and the Mayor and City Council of Baltimore, certain stocks of the Fire Insurance Company and of the City of Baltimore alleged to have been transferred to Frank Ehlen by his father John F. Ehlen in breach of his trust, and which transfers were perfected on the books of the insurance company and of the Mayor and City Council under circumstances which, the bill alleges, affected them with knowledge of the breach of

14               v. 72

trust, and consequently made them answerable for having
aided in it.

It appears, by the record of the case in 63 *Md.*, which
by agreement is made a part of this record, that by decree
of the Circuit Court of Baltimore City, there was a parti-
tion of the property of John H. Ehlen among the parties
entitled, and that one-eighth thereof was awarded to
John F. Ehlen, trustee under the will, for his children
then living or thereafter to be born to him; and that
the share allotted to John F. Ehlen, as such trustee,
amounted to $15,700.23; and that by a sale of some prop-
erty afterwards ordered by the Court to be sold for par-
tition this one-eighth share of the testator's estate was
swelled to considerably over sixteen thousand dollars.
Very much the larger part of the share thus allotted to
John F. Ehlen, trustee, consisted of Baltimore City
stocks, railroad stocks, and stocks in Fire Insurance Com-
panies, which stood in the name of the testator.   The bill
in this cause charges, that among the stocks thus assigned
to John F. Ehlen as trustee was $2500 of Baltimore City
stock of 1890, appraised at 112, making the sum of twenty-
eight hundred dollars, and (52) fifty-two shares of the
stock of the Baltimore Fire Insurance Company, ap-
praised at $27 per share, making the sum of ($1404.00)
fourteen hundred and four dollars.   This Baltimore City
stock so awarded to John F. Ehlen, trustee under his
father's will, (by decree of the Circuit Court of Balti-
more City on the 8th of March, 1878,) the bill charges
was transferred, between the 8th of March, 1878, and the
8th of April, 1878, by John F. Ehlen and Benjamin F.
Newcomer, executors of John H. Ehlen, to John F. Ehlen
trustee under the will of John H. Ehlen, on the books
of the Register's office of Baltimore City; and that on the
8th day of April, 1878, the same stock was transferred on
the city's books to Frank Ehlen, a son of John F. Ehlen,
by John F. Ehlen, trustee; and that this transfer was

made without the order of the Court and without the sanction of the will of John H. Ehlen; and that the Mayor and City Council well knew that the trustee had no authority to make the transfer, and that the same was without lawful authority.

The fifty-two shares of stock of the Baltimore Fire Insurance Company which were awarded in the partition to John F. Ehlen, trustee under his father's will, the bill charges that the executors of John H. Ehlen transferred on the books of the company to John F. Ehlen, trustee, and that he afterwards transferred the same on the books of the company to Frank Ehlen, son of the trustee John F. Ehlen; and the bill charges that the Baltimore Fire Insurance Company well knew that there was no order of Court authorizing such transfer to Frank Ehlen, and that the same was without lawful authority. The bill charges John F. Ehlen to be insolvent, and prays that Frank Ehlen and the Mayor and City Council may be required to make good the ($2500) twenty-five hundred dollars of city stock transferred as herein before stated to Frank Ehlen without lawful authority; and that Frank Ehlen and the Baltimore Fire Insurance Company may be required to make good the fifty-two shares of that company's stock illegally assigned to Frank Ehlen.

In their *answer* the fire insurance company admits that on the 18th of July, 1878, fifty-two shares of the capital stock of the company stood in the name of John F. Ehlen and Benjamin F. Newcomer, trustees, and on that day the certificate was surrendered with an endorsement for its transfer to John F. Ehlen, trustee, but without any declaration of the trust or designation of the character of trust under which the stock was to be held, and that a new certificate therefor was issued, and that on the 22nd of January, 1879, the same stock was transferred to Frank Ehlen, by John F. Ehlen, trustee.    The company

denies that it had any knowledge of the transfer being made without legal sanction or in violation of the terms of John H. Ehlen's will, and further claims in the answer that there was not anything to show, or put it upon inquiry, that the trustee John F. Ehlen did not have authority to make the transfer. It denies that so far as the insurance company respondent is concerned, the transfer was made in fraud of the *cestuis que trust.*

· The Mayor and City Council by their answer admit that the executors of John H. Ehlen were, on the 5th of April, 1878, holders of the city stock mentioned in the bill which was transferred on their books on that day to John F. Ehlen, trustee; and that on the 8th of April, 1878, the same was transferred on their books to Frank Ehlen; but they deny that they had any knowledge of the *will* or its trusts, or any thing to put them on inquiry about the same, and deny that they are in any way liable to make good the misapplication of the trust property by John F. Ehlen, the trustee. The Baltimore Fire Insurance Company and the Mayor and City Council of Baltimore defend separately, but the counsel for each of those respondents relies upon the decision of this Court in *Albert and Wife vs. Mayor and City Council of Baltimore, et al.,* 2 *Md.,* 159, as fully establishing that there was nothing in this case to put them upon inquiry, contending that the facts of that case are precisely analogous to this, and that decision must control the decision in this case. No other authority has been cited to sustain their view of non-liability; and after careful search we think no other can be found in or out of the State tending to sustain their contention.

So far as the Mayor and City Council are concerned, we think their case bears little resemblance to the case of *Albert* in 2d *Md.* It is, however, exactly analogous, in its facts, to the case of *Stewart and Duffy, Trustees vs. Fireman's Ins. Co., et al.,* 53 *Md.,* 565, where the fire

insurance company was held liable for the unauthorized transfer of stock by a trustee on the books of the company. In that case there was a will by which certain stocks in the fire insurance company passed, under a residuary clause of the will, to trustees, in trust for testator's grandson for life, with contingent limitations over. The trustees, with the approval of the insurance company, transferred portions of these stocks, and converted them to their own use in breach of their trust. They were removed and Duffy and Stewart were appointed trustees in their stead, and sued the Fireman's Insurance Company, with others, for the stock improperly assigned and converted by the trustees, who were removed for their breaches of trust. Precisely the same defence was set up there as is set up here, and *Albert's Case in* 2d *Md.*, was also relied on, but the Court very properly distinguished it from *Albert's Case,* and held the company negligent in allowing the transfers and perfecting them, when it had enough to put it on inquiry as to the nature of the trust, and failed to make such inquiry, and consequently liable. In that case the stock stood on the books of the company in the name of the original owner until the transfers were made by the executors; and the Court notes the difference between that case, in that regard, and *Albert's Case* where the stock never did stand on the books in the name of the testator, but were purchased by the executors after the death of the testator.

In *Stewart & Duffy's Case,* 53 *Md.*, 575, the Court says: "The fact that Simms and Tyson, in making these transfers, professed to act as executors of Johnson, the deceased stockholder, gave the company or its officers, to whom superintendence of transfers was committed, actual notice that Johnson left a will which was open to inspection, upon the public records, and made the company chargeable to the same extent as if such officers

had actually read it, and thereby made themselves acquainted with its contents. The company, therefore, must be dealt with as if it had actual knowledge of the provisions of that will at the time the first transfer was proposed to be made. This proposition was expressly decided by Chief Justice TANEY in the case of *Lowry vs. Commercial and Farmers Bank, Campbell's Reps.*, 310. (*Taney's Circuit Court Decisions by Campbell.*") This decision by Judge TANEY has been adopted throughout the country now as the law, and is the leading case on the subject. Applying its principles and the reasoning of the Court in the case of *Stewart & Duffy*, we cannot see how the Mayor and City Council can escape liability in this case. The stock in this case was the stock of the testator, and stood on the city's books in the testator's name when he died. It is admitted in the answer that the executors of the testator made the assignment of the stock to John F. Ehlen as trustee on the fifth day of April, 1878, and that three days afterwards John F. Ehlen, trustee, transferred the same stock to Frank Ehlen. Now, according to the doctrine of *Lowry vs. Commercial and Farmers Bank, (Campbell's Reports,* 310,) so unequivocally adopted and pronounced in *Stewart & Duffy, Trustees vs. Fireman's Ins. Co.*, 53 *Md.*, 575–6, the city's officers were notified of a will of which John F. Ehlen and Benjamin F. Newcomer were the executors, and by referring to the same, which was of record, they would have learned by what authority and for what purpose the assignment was made to John F. Ehlen as trustee, and would have learned that he could not assign that stock, as he did, without an order of Court, without committing a breach of trust; and if they failed to make the proper inquiry and examination, it was their own fault and they must bear the consequences. of their negligence, and must be treated as having full knowledge of all the circumstances of the case. It is

true the last assignment was only subscribed "John F. Ehlen, trustee," and it is contended that was not, of itself, under *Albert's Case,* sufficient to put the city on notice.    The effect of the simple addition of "trustee" to the signature of assignor will be considered hereafter in this opinion, but for the purposes of the case against the Mayor and City Council, it is unnecessary to consider it.    The assignment by the executors to John F. Ehlen, trustee, and by him to Frank, were so nearly contemporaneous that it would be most unreasonable to hold that the city was not affected with knowledge of the source of John F. Ehlen's title as trustee, which the city's officers had only approved three days before.    So far as the case against the city is concerned, we are unable to distinguish it, in any particular, from the case of *Stewart and Duffy,* and think that case fully establishes the city's liability.

There is more plausibility and force in the contention, made on the behalf of the Baltimore Fire Insurance Company, that their case falls within the ruling in *Albert's Case in 2d Md.;* but a careful consideration and examination of the facts reveals such differences between *Albert's Case* and this, that we cannot deny the liability of the fire insurance company on the strength of that case.    In that case the stock involved never stood on the books of the company as the property of the testator in his life-time.    Here it was the testator's property and stood in his name at his death on the books of the company.    When the transfer made by the executors in *Albert's Case* was made, the assignment by the executor might be presumed to be rightful by reason of his general power over the estate, for the Act of 1843, chapter 304, had not been passed.    That Act declared that no title should pass where the executor disposed of property without an order of the Orphans' Court first had and obtained.    Section 274 of Art. 93 of the Code of 1860, makes that provision, and was the law when

the transfers here involved were made; and the law still is, under section 276 of Art. 93 of the present Code, that such sale, without the previous order of the Orphans' Court, is void.   Judge TANEY, in *Lowry's Case* (already cited) which grew out of the same will as did *Albert's Case*, adverts to the fact, that the Act of 1843, chapter 304, had not then been passed, so as to make the act of the executor subject to suspicion and question.   If the authority of *Albert's Case* is to be regarded as still binding and unshaken by subsequent decisions in the State, still we think the distinctions we have noticed are sufficient to withdraw this case from its control.   The modern doctrine, in respect to what constitutes notice in such cases, and that which obtains everywhere, is so much broader in its reach than that which is found in *Albert's Case*, that to keep in harmony with the decisions and law as received elsewhere, we do not think the case of *Albert in 2d Md.* should be followed in any case which is not precisely analogous in all its facts.

As this Court has approved the case of *Shaw vs. Spencer*, 100 *Mass.*, 382, in *Third National Bank of Baltimore vs. Lange, et al.*, 51 *Md.*, 144; and again in *Swift vs. Williams and Moore, Trustees*, 68 *Md.*, 255 *and* 256, where the Court followed *Shaw vs. Spencer*, 100 *Mass.*, and held that the addition of the word *trustee* was notice of a trust which called for inquiry and examination, it is very certain that *Albert's Case* cannot be followed except in a case exactly analogous in its facts.

In the case of *Shaw vs. Spencer*, (100 *Mass.*,) it was *stock* which was sold by the trustee, with the addition of the word trustee to his signature to the transfer.   In *Lowry's Case* Judge TANEY says the corporation is the custodian of the stock, and clothed with powers to protect all persons interested from unauthorized transfers; and that it is the duty of the corporation to exercise diligence in the discharge of its trust to see that un-

authorized transfers are not made to the prejudice of *cestuis que trust.* This doctrine so fully obtains that *Cook on Stock and Stockholders, sec.* 399, lays it down as text book law, that if the corporation neglects its duty in this regard, it becomes liable for the breach of trust which may be committed.

A trustee presumptively holds trust property for administration and not for sale. *Jaudon vs. National City Bank,* 8 *Blatchford,* 430. In 15 *Wall.,* 165, in affirming this decision of Judge BLATCHFORD, the Supreme Court says the party taking such stock in pledge deals with it at his peril for there is *no presumption of a right* to sell it. There being no presumption of the right to sell, a corporation ought to be held affected with notice that a trustee is probably violating his trust when he attempts to sell trust property, known *to the corporation* to be such, without the production of authority for making the transfer.

In the case of the Baltimore Fire Insurance Company it is admitted by agreement made part of the record, that on the 11th of January, 1865, there were 416 shares of the stock of the company standing in the name of *John H. Ehlen;* and that on that day the *executors* of John H. Ehlen transferred them on the books of the company to *themselves* as trustees. On the 20th of July, 1878, fifty-two of these shares were transferred by the executors John F. Ehlen and Benjamin F. Newcomer to John F. Ehlen, trustee; and on the 22nd of the succeeding January, 1879, fifty-two shares were transferred by John F. Ehlen, trustee, to his son Frank Ehlen. Others of the 416 shares were transferred to other parties; but in this case we have only to do with the fifty-two shares thus transferred to Frank Ehlen.

In this state of facts the Fire Insurance Company contends there was nothing disclosed which gave the company notice of the character of the trust, and there was

nothing putting upon inquiry so as to affect the company with constructive notice. Counsel relied on the length of time which had elapsed from the change on the books from the testator's name to the executors as trustees, and from them as trustees to John F. Ehlen as trustee, and insisted that there was no source of information indicated but the trustee, and, if they had applied to *him*, they probably would have received answer that the stocks were really his. This view cannot be tenable. The history of the transaction was before the company on its books. It had notice by its books that the stock was originally the property of a person who had made a will, for executors made a transfer of the stock to themselves as trustees. By what authority that was done according to *Lowry's Case* and *Stewart and Duffy's Case*, the company was bound to have understood before allowing the transfer. Being once informed of the will and its provisions affecting that stock, that knowledge continued all the way down, and the company was bound to see that the trust property in their custody was protected and was not misappropriated. Having failed to do its duty, and allowed the stock to be improperly assigned away and wasted, which could not have been done without the company's co-operation, the company is bound to make good the loss.

The remaining question in the case is to what extent the plaintiff shall be allowed to recover. All the *cestuis que trust*, except one infant, Blanche Ehlen, have assigned their interests to their father, ratifying his acts as trustee; and the appellees insist that in no event can recovery be had except to the extent of Blanche Ehlen's interest, which they say is only one-fifth of the stock misapplied, on the ground that the release of John F. Ehlen enures to them. To a certain extent this is true; but the full effect of that release and assignment is not yet known, and the relief as to it cannot yet be accorded to the appellees. The trust, by the will, was consti-

Marbury, Trustee *vs.* Ehlen, *et al.*

tuted for the benefit of the children of John F. Ehlen now living, or that may hereafter be born. There is no restriction to the children of any particular wife. He is still living, and we cannot assume other children may not come into being who shall be entitled to share in the fund. Until John F. Ehlen's death the fund must remain undivided, but on his death the respondents would be entitled to have restored to them such shares thereof, as would not belong to Blanche Ehlen or other children that may possibly become participants in the trust, but who are not now in being. The appellees will be entitled ultimately to be subrogated to the shares of those who have released. Until such time as division of the fund may be had it must remain as an entirety, and then division must be made in strict conformity to the will. The theory of the appellant that the infant Blanche must, in the division, be allowed her share of the whole trust estate out of this portion of it, cannot be assented to. That would be making these appellees bear the consequences of breaches of trust in which they had no participation, and is too grossly inequitable to be thought of. For the reasons we have assigned the decree dismissing the appellant's bill will be reversed, and the cause will be remanded to the end that a decree may be passed in conformity with the views we have expressed in this opinion; that is to say, that a decree may be passed directing the Mayor and City Council of Baltimore and the Baltimore Fire Insurance Company to pay the respective sums due the trust from them by reason of the tranfers of stock to which they have respectively assented; and that the same may be held by the plaintiff as trustee during the life of John F. Ehlen, and at his death for division according to the principles we have expressed.

*Decree reversed, and*
*cause remanded.*

(Decided 18th March, 1890.)