(Decided December 1st, 1897).

---

PEYTON M. HUGHES, Trustee, vs. THE DROVERS' AND MECHANICS' NAT. BANK OF BALTIMORE.

*Devise and Legacy—Bequest of Shares of Stock for Life, but to be Transferred to the Legatee—Corporation not Liable for Transfer of the Shares by the Legatee.*

A testator bequeathed to his married daughter M. certain property, and also shares of stock in the defendant bank and then provided as follows : "All of which is to be transferred to her in her own name to use the interest thereof as long as she may live, and at her death to be equally divided among her children, unless she becomes a widow, then she is to have full control of this bequest to do with as she pleases." The Orphans' Court ordered the executors of the will to transfer the stock to M. absolutely, which was done, and M. sold the same at different times and used the proceeds. Upon a bill filed by the children of M. a trustee was appointed to take charge of the property bequeathed to her for life and this trustee filed a bill against the bank alleging that it had improperly permitted M. to transfer said shares of stock. *Held*, that under the will M. was entitled to have the shares transferred to her own name with all the rights incident to full ownership, and that, if there was a trust, the bank was not affected with notice of it, and if the sale of the stock by M. was improper, the bank was not liable for having permitted the same.

Appeal from a decree of Circuit Court No. 2, of Baltimore City (STOCKBRIDGE, J.), dismissing the bill of complaint.  The will of John Carnes, referred to in the opinion of the Court, having been duly proven, the executrices passed an administration account in the Orphans' Court of Baltimore City by which they distributed the twenty shares of stock of the appellee to Martha Pawley, and upon the 15th day of May, 1884, the Orphans' Court of Baltimore City, upon the petition of the executrices, ordered and decreed " that said executrices have transferred to the legatees under the will, viz. :  Margaret Pawley, twenty shares of stock of the National Drovers' and Mechanics' Bank of Baltimore ; Andrew J. Carnes, five shares of the Consolidated Gas Company of Baltimore."  Thereupon said executrices took the certificate for twenty shares of stock of the Drovers' and Mechanics' Bank, and the order of the Orphans' Court to said bank, and had the stock transferred to Margaret Pawley.  Subsequently, at various times between the 26th of September, 1884, and the 24th of September, 1886, this stock was sold and transferred by said Margaret Pawley to various persons, she received the money for the same and appropriated said money for the support of her children, her husband and herself.

On the 1st of July, 1895, the children of Margaret Pawley filed a bill in the Circuit Court of Baltimore City, alleging the death of John Carnes and the qualification of his executrices, and that in the course of administration of the estate of John Carnes in the Orphans' Court of Baltimore City, the estate referred to in the second clause of said will was distributed to the said Margaret Pawley for life, save and except in the event of her surviving her husband, when in that event, she should take the estate absolutely.  This bill further asked for the appointment of a trustee to take charge of the estate, collect rents, &c., " and to pay over to the life tenant the income derived from said estate, &c."  Margaret Pawley, the mother, answered this bill and submitted to the passing of such order as the Court might deem

proper, and thereupon, the Circuit Court appointed Peyton M. Hughes, trustee, to take charge of the property, real and personal, bequeathed and devised by the will of John Carnes, deceased, to his daughter, Margaret Pawley, for life, and to collect the rents, issues and profits thereof, and to pay over the same after the payment of the expenses incidental thereto to the said Margaret Pawley. On the 29th November, 1895, the Circuit Court, on the petition of Peyton M. Hughes, authorized and directed him to institute all necessary proceedings at law or in equity to recover from the Drovers' and Mechanics' National Bank the certificate of stock or the monies represented in the same, and he filed the bill in this case.

The cause was argued before McSHERRY, C. J., BRYAN, FOWLER, BRISCOE and PAGE, JJ.

*Henry C. Kennard* (with whom was *Morrill N. Packard* on the brief), for the appellant.

*James McColgan*, for the appellee.

PAGE, J., delivered the opinion of the Court.

The object of this proceeding is to require the appellee corporation to deliver up to the appellant, trustee, the certificate of twenty shares of its stock, or a new certificate for that number of shares, or the equivalent of them in money.

There are but few facts in the case, and these are undisputed. John Carnes of Baltimore City, deceased, by the second clause of his will devised and bequeathed to his "married daughter, Margaret Pawley, house No. 128 N. Eden street; I also give her twenty shares of the Nat. Drovers' and Mechanics' Bank, par value one hundred dollars each ; I also give her one ground rent on the N. E. corner of Monument and Durham streets, and I also give her whatever may be due me from two shares of the East Balto. Permanent Land Co. and Building Society, *all of which is to be transferred to her in her own name*, to use the interest

thereof as long as she may live, and at her death to be
equally divided among her children, unless she becomes a
widow, then she is to have full control of this bequest, to
do with it as she pleases.    I also give her the amount as
shown on my book due me by her husband, Finley Pawley.''
On the 15th of May, 1884, the Orphans' Court of Baltimore
City ordered and directed that the ''said executrices have
transferred to the legatees under the will, viz: Margaret Paw-
ley 20 shares of the National Drovers' and Mechanics' Bank
of Baltimore; Andrew J. Carnes five shares of the Consoli-
dated Gas Company.''    Thereupon the stock of the National
Drovers' and Mechanics' Bank, being the stock now in
question, was transferred to Margaret Pawley, who later on
sold it to various persons, and used the proceeds thereof
for the support of herself and her family.    It is not con-
tended that the bank had other knowledge of the condition
of Mrs. Pawley's ownership than that which appeared from
its own records.    None of the stock was purchased by the
bank on its account, and it had nothing to do with the
transactions by which the title passed from Mrs. Pawley,
except to permit the transfers to the purchasers to be made
on its books.

Upon these facts, it is contended by the appellant that
Mrs. Pawley had only a life-estate in the stock, and it was
the duty of the bank to see that no transfer should be made
by her that did not protect the interest of the persons en-
titled to the fund after her death—and this, notwithstanding
the order of the Orphans' Court.    This conclusion, it is
argued, ensues from the fact that by reason of the transfer
of the executrices of the will of John Carnes, the bank had
notice of or was bound to know the contents of that instru-
ment, and such knowledge, as was said in *Ehlen's case*, 72
Md. 218, '' continued all the way down.''

Passing by, however, the effect of the order of the Or-
phans' Court and assuming, for the sake of the argument,
that under all the circumstances of the case, the bank must
be charged with full notice of the will and its contents, let

us inquire what were the rights of Mrs. Pawley in and concerning the stock. It was insisted by the appellee, that " no trust whatever was created " by the second paragraph thereof; that the words—" to use the interest thereof as long as she may live and at her death to be equally divided among her children, unless she become a widow, then she is to have full control of this bequest, to do with it as she pleases "—when taken in connection with the direction to " transfer to her in her own name," ought to be regarded as words of recommendation only, and insufficient to raise a trust. However that may be, it is clear that some force must be given to the words, " all of which is to be transferred to her in her own name." It should be noted, that in the first paragraph the testator employs the same words in reference to the gift of real and personal property to his other daughter, on whom he unquestionably intended to bestow all the property therein named, without any limitation whatever. When he uses the same words in the second paragraph, we are not at liberty to suppose he used them without intending they should have some significance. It he merely intended to convey a life-estate to his daughter with remainder to her children, the grant would have been as effectual without them as with them. By requiring that the full title should stand " in her own name," did he not intend she should have the full power of disposing of it— at least for the purpose of a change of investment ? He knew when the stock was transferred to her she would receive a certificate under the seal of the corporation, to the effect that she was entitled to twenty shares of stock, which could be transferred on the books of the corporation when she surrendered the certificate. *Bank* v. *Lanier*, 11 Wallace, 369; *Kortright* v. *Bank*, 20 Wendell, 94.

It cannot be supposed that when the testator directed she should hold the stock in her own name, he intended to deny to her what was the consequence of such holding ; that is the power of transferring it; and to grant her this power, was equivalent to granting her the right to do so. The direc-

tion, therefore, that the stock should be transferred to her in her own name, would seem to confer upon her all the rights incident to full ownership, so far at least as the power of disposition was concerned. It indicated that the testator reposed in her an especial confidence, and trusted to her prudence and discretion for the care and protection of the property. If he intended to raise a trust, he also intended to commit it to her hands, with plenary powers to sell it whenever in the exercise of her judgment a change in the investment became necessary.

This, then, is the case of a person holding stock in her own name, with full power to transfer it. Under such circumstances it is immaterial to inquire as to what notice the bank had or ought to have had ; or what authority the Orphans' Court had to pass the order of the 15th of May, 1884. It was undoubtedly within the express terms of the will, that the stock was transferred to Mrs. Pawley. Though there might be a trust for the benefit of the children, yet if she has power to transfer it the bank had no power to prevent it, and no obligation to see to the application of the purchase money. Not even a purchaser from the trustee is bound to look to the application of the purchase money in a case where the trustee has power to sell and reinvest. *Van Bokkelen* v. *Tinges*, 58 Md. 57.

Nor can a corporation, whose duty to its stockholders is to protect persons interested, " from unauthorized transfers " (*Lowry's case,* Taney's Dec. 310–317), be bound to examine whether the transferrer with power to transfer, is not attempting a fraud. Corporations are the custodians of the evidence of title to their stock, and for that reason are held to the exercise of reasonable care and diligence in its preservation. They are bound to require, and are entitled to, the production of satisfactory evidence of the authority of the person who proposes to make the transfer. But when they have notice of the want of authority, or being put upon inquiry, fail to make the proper investigation, they become responsible for allowing an unauthorized transfer to be made.

*Peck* v. *Bank of Am.*, 16 R. I. 710; *Bayard* v. *Farmers' Bk.*, 52 Pa. St. 35; *Crocker* v. *Old Colony R. R.*, 137 Mass. 417; *Marbury, Trustee*, v. *Ehlen*, 72 Md. 216; *Robb* v. *Grafflin*, 84 Md. 453; *Stewart* v. *Firemen's Ins. Co.*, 53 Md. 575; *Abell* v. *Brown*, 55 Md. 222.

It may be proper to add that if the will created a trust, and the bank knew or had reasonable ground for believing that Mrs. Pawley intended to misapply the money, or by the very act of transferring was applying it in violation of the terms of the trust, there would then arise a question that the facts of this case do not now present. The decree must be affirmed.

*Decree affirmed.*

(Decided December 1st, 1897).