## JOHN E. ALEXANDER *vs.* THE FIDELITY AND DEPOSIT COMPANY ET AL.

*Unauthorized Sale of Property by an Executor—Notices of Breach of
Trust—Invalid Assignment of Mortgage—Surety on Bond of Exe-
cutor Paying Loss Subrogated by Agreement to. Right of Parties in
Interest.*

The executor of a will invested funds of the estate in a mortgage, and
afterwards sold the same to A without any order of Court authorizing
the sale, and he executed the assignment of the mortgage as executor
of the designated testator. A acted in good faith and paid the face
value of the mortgage. The executor died insolvent, after having
wasted all the assets of the estate. *Held*, that the assignment to A,
being made by the executor as such, was notice of the fact that the
mortgage was held under the provisions of the will, and that A acquired
no title to the mortgage, since Code, Art. 93, sec. 282, provides that
no executor or administrator shall sell any property of his decedent
without an order of the Orphans' Court previously had and any sale
made without a previous order of Court, shall be void, and no title
shall pass thereby to the purchaser.

*Held*, further, that the fact that the mortgage had not been owned by the
testator but was only purchased with the funds of his estate, does not
exempt the sale from the operation of the statute, since the investment
was merely a change in the form of testator's property.

*Held*, further, that a mortgage is property within the meaning of the said
statute.

A will directed the executor to keep the testator's estate invested during

his widow's life and to pay the income to her. A surety company executed a bond conditioned for the faithful performance of his duties by the executor. An order of the Orphans' Court authorized the executor to invest a certain sum of money in a designated mortgage, which was accordingly done, the mortgage being assigned to him as executor. Afterwards the executor assigned this mortgage to a third party without an order of the Orphans' Court, received payment therefor, and died insolvent, after having wasted all the funds of the estate. A substituted trustee of the testator's estate was appointed, and he made an agreement with the surety company, approved by an equity Court, by which the surety company paid a certain sum, less than the full amount of the testator's estate, in satisfaction of the trustee's claim and received an assignment of the claims of the trust estate, against the mortgaged property and other securities. The property covered by the mortgage was sold, and the proceeds were brought into Court for distribution. *Held*, that the surety company is entitled to the proceeds of the sale, not merely upon the general principles of snbrogation, but as assignee of the right of the parties entitled to the estate under the will; that therefore it makes no difference whether the surety company was liable under the terms of its bond or not, and that the assignee of the mortgage from the executor, having acquired no title because the sale was unauthorized by an order of Court, is not entitled to any part of the proceeds of sale, although the surety company made a settlement by paying less than the full amount of its liability to the testator's estate.

*Decided June 25th, 1908.*

Two appeals from the Circuit Court for Cecil County (ADKINS and HOPPER, JJ.)

The cause was argued before BOYD, C. J., BRISCOE, PEARCE, SCHMUCKER, BURKE and WORTHINGTON, JJ.

*William S. Evans* (with whom was *Omar D. Crothers* on the brief), for John E. Alexander.

*Washington Bowie, Jr.* (with whom was *L. Marshall Haines* on the brief), for the Fidelity and Deposit Co.

SCHMUCKER, J., delivered the opinion of the Court.

The cross appeals in this case are from an order sustaining exceptions to two alternative auditor's accounts, distributing the proceeds of sale of mortgaged property sold under the decree of a Court of equity and giving directions for the state-

ment of a new account.   The contesting claimants to the fund
are John E. Alexander, who claims under an alleged assign-
ment of the mortgage, and the Fidelity and Deposit Company
of Maryland, which claims under an alleged right of subroga-
tion which will be more fully stated later on in this opinion.

The facts giving rise to the controversy may be stated
as follows:  Benjamin Pearce of Cecil County died in 1895
leaving a will by which he gave the income and profits of his
entire estate to his wife for her life and the estate itself to his
children after her death.   The will directed the executor to
keep the estate safely invested during the widow's life and pay
her the income produced by it.   John S. Wirt was named in
the will as executor and he duly qualified as such with The
Fidelity and Deposit Company as surety on his bond which
was in the form prescribed by sec. 48 of Art. 93 of the Code.
By what was called upon its face "the first and final account"
of Wirt as executor of Benjamin Pearce, passed in the Or-
phans' Court of Cecil County on May 13th, 1896, there
appeared to be in the hands of the executor a net cash balance
of $13,515.72.   By an order of that Court passed on the same
day this balance was distributed to the executor and he was
directed to invest it in good securities and pay the income
arising therefrom to the testator's widow during her life.

On January 14th, 1896, the Orphans' Court upon the peti-
tion of Wirt as executor authorized him to invest $3,000 of
the monies of the Pearce estate in his hands by the purchase
from Elizabeth B. Groome of a mortgage for that sum upon
his (Wirt's) own residence.   In pursuance of this order the
mortgage for $3,000 was purchased and the assignment
thereof taken "to John S. Wirt, executor of Benjamin Pearce."

On August 11th, 1903, Wirt without authority from any
Court or from the parties beneficially interested in the mort-
gage for $3,000, sold it at its face value for cash to John E.
Alexander and assigned it to him, executing the assignment
as "executor of Benjamin C. Pearce."   Wirt died in May,
1904, insolvent, having completely devastated the estate of
Benjamin C. Pearce.

After the death of Wirt, letters of administration *d. b. n. c. t. a.* on the estate of Benjamin C. Pearce were issued to James C. Morrow who brought suit against The Fidelity and Deposit Company, as surety upon the bond which had been given by Wirt as executor, but it was held by the Circuit Court, and affirmed by us on appeal in 100 Md. 256, that the administrator *d. b. n.*, being entitled only to the assets on which there had been no administration, could not maintain the suit. Morrow was then appointed, by the Circuit Court for Cecil County, trustee to execute the trusts of the will of Mr. Pearce and authorized as such to sue for and recover the funds and property misappropriated or wasted by Wirt as executor and to that end to put in suit the bond given by him as executor.

George R. Ash having, in the meantime, been made admintrator of the estate of John S. Wirt filed the bill in the present case against all persons interested in the estate including the Fidelity and Deposit Company, James C. Morrow, trustee, John E. Alexander and all others claiming to have liens against the real estate owned by Wirt at the time of his death and praying among other things for a sale of the said real estate and a distribution of the proceeds among them according to their respective priorities, and for an administration of his estate under the direction of the Circuit Court in equity. A decree was passed in due course in the case for the sale of the realty and the sale was made clear of the liens of all parties to the suit, and the proceeds of sale were brought into Court for disposition.

Before the filing of the bill Morrow as trustee had brought suit against The Fidelity and Deposit Company as surety on the executor's bond of Wirt to recover $13,515.72 as the amount of the *devastavit* alleged to have been committed by him, and the company had admitted its liability on the bond and Morrow as trustee, under the direction of the Circuit Court, subsequently settled with the company by accepting, in satisfaction of the sum of $13,425.72 ascertained to be due on the bond, the sum of $10,000 in cash with a conditional guaranty for the payment of the further sum of $2,000. It was agreed

as part of the terms of this settlement that the claims of the plaintiff to certain securities including the $3,000 Groome mortgage should be assigned to the company.

The Fidelity and Deposit Company having complied with the terms of the settlement on its part filed a petition in the equity suit setting out the litigation on the bond and its settlement and praying that, in the distribution of the proceeds of sale of Wirt's real estate, it might by way of subrogation be allowed the amount of the $3,000 mortgage and interest which was a first lien on Wirt's residence.

In that attitude of the case it was referred to the auditor to state an account distributing the proceeds of sale. He returned alternative accounts stated in accordance with the respective theories of the counsel for Alexander and those for the Fidelity Company. The net proceeds of sale amounted to $4,328.54, out of which auditor's Account A allowed to The Fidelity and Deposit Company the principal and interest of the Groom mortgage debt amounting to $3,371.00 and to George R. Ash, administrator of Benjamin C. Pearce's estate the remaining $957.54. Account B allowed to Alexander as owner of the Groome mortgate the $3,371.00 and the remaining $957.54 to Ash as administrator.

Each party excepted to the account allowing the fund to the other and upon the hearing of the exceptions the Court held that the Fidelity Company was entitled to be subrogated to the claim of Mr. Pearce's estate to the $3,000 Groome mortgage to the extent that it had satisfied that claim, but, as the company had settled the case against it on Wirt's bond for less than the face amount of its indebtedness, a corresponding deduction, ascertained to amount to $358, should be made from the $3,371 due under the mortgage in favor of Alexander and the balance of $3,013.00 only be awarded to the company. The Court, having reached that conclusion, passed an order setting aside both accounts and remanding the case to the auditor to state a new one in accordance with its conclusions. From that order both Alexander and the Company appealed.

The first and most important question presented by the record is whether Alexander took a good title to the Groome mortgage for $3,000 when he purchased it from Wirt as executor of Mr. Pearce's estate. It is conceded that Alexander acted in good faith in making the supposed purchase and paid the face value of the mortgage to Wirt for it. The real question is one of the power of Wirt as executor without the authority of some Court of competent jurisdiction to divest the title to the mortgage which was confessedly one of the assets of the estate in his hands. There is no doubt in our minds that the question must be answered in the negative.

Whatever may have been the extent of an executor's power to convey to third persons the assets of the estate in his hands prior to the passage of the Act of 1843, ch. 304, now sec. 282 of Art. 93 of the Code of 1904, there can be no doubt that that Act imposed distinct limitations upon his power. Its provisions are as follows: "No executor or administrator shall sell any property of his decedent without an order of the Orphans' Court granting his letters first had and obtained, authorizing such sale; and any sale made without an order of Court previously had, as aforesaid, shall be void, and no title shall pass thereby to the purchaser."

Sec. 284 of the same Article provides that sec. 282 shall not apply to cases where the executor has been authorized by the will of his testator to make sale of any property without application to the Orphans' Court, but as no such power appears in the will of Mr. Pearce, we are not concerned with or affected by sec. 284. Not only is this prohibition against the sale, by an executor, of any property of his decedent without an order of the Orphans' Court, except in cases provided for by sec. 284, expressed, in language too plain to admit of any doubt as to its meaning, in sec. 282, but it is there followed by an equally clear provision that no title shall pass to the purchaser by any such sale. The clear and comprehensive character of sec. 282 has been fully recognized by us in the cases of *Brooks* v. *Bergner*, 83 Md. 352 and in *Marbury* v. *Ehlen*, 72 Md. 215, 216.

The counsel for Mr. Alexander however contend that section 282 does not apply to the present case because the mortgage which was sold to him by Wirt was not *property of his decedent* but merely property which the executor had purchased with the funds of his decedent's estate by way of investment.   They insist that, as the section operates to restrict the powers of executors existing before its passage, it must be interpreted in the light of the familiar principle that statutes in derogation of the common law must be strictly construed. They also contend that a mortgage is not "property" within the meaning of sec. 282.

. We cannot yield our assent to either of these contentions. The sale by an executor, without the authority of the Orphans' Court of the converted or reinvested proceeds of portions of the estate of his decedent is a sale of property of his decedent within the meaning of the statute.   The mere change in the form of the property while in the hands of the executor should not be held to alter his relation to it or relieve him from responsibility for its safe custody.   The statute must receive a construction in harmony with its plain purpose which was to give to the Orphans' Court, to which the law has confided supervision of the administration of estates of deceased persons, power to protect the parties interested in them by preventing improper or unnecessary alieniations of the assets by executors.   The sale without authority of the assets, in their converted form is as much within the mischief aimed at by the statute as a sale of them in their original form would be. We also hold that a mortgage is property within the meaning of the statute.   The term "property" ordinarily embraces every species of valuable right and interest, including real and personal property, easements, franchises and hereditaments. *Bouvier Law Dict.*, vol. 2, p. 781.   The Laws of Maryland not only recognize the right of property in mortgages and regulate the acquisition and transfer of them by providing for the public record thereof, but sec. 21 of Art. 66 of the Code, provides that upon the death of a mortgagee of lands his interest both in the mortgaged lands and his right to the mortgage debt shall devolve on his executor.

The fund in controversy is also claimed for Alexander upon the ground that he was a *bona fide* holder of the mortgage for value and without notice of any infirmity in the title thereto acquired by him. That contention cannot be successfully maintained. The assignment of the mortgage under which he claimed title was on its face made by Wirt as executor of Benjamin C. Pearce and thereby notified the purchaser that Wirt did not hold the mortgage in his own right but in the capacity of executor, and furnished information of the particular estate to which it belonged. We have repeatedly held that ordinarily the appending of the word trustee to his signature by a vendor carries with it notice of a trust. *Marbury* v. *Ehlen, supra*; *Nat'l Bank* v. *Lange*, 51 Md. 144–5; *Swift* v. *Williams*, 68 Md. 249; *Safe Deposit Co.* v. *Cahn*, 102 Md. 530. Without determining that the mere presence of the word executor in the signature to a document would under all circumstances amount to notice of a trust, we are clear, that under the facts of this case the execution of the assignment of the mortgage by the executor as such imparted such notice to Alexander, the purchaser, as to put him upon inquiry and affect him with knowledge of the facts which he would have discovered if he had examined the land records touching the acquisition of the mortgage by Wirt and the records of the Orphans' Court touching Mr. Pearce's will and the administration of his estate.

It is further to be said that the transaction with the executor into which Alexander entered involved an out and out sale to him of an asset of the estate. Under the decisions of this Court an executor is presumed to hold the assets in his hands not for sale but for distribution, for it is the policy of our testamentary system to require a distribution in kind of the estates of deceased persons, unless a sale is necessary for a satisfactory division or the payment of debts, and it is for the Court to determine whether the necessity exists. *Williams* v. *Holmes*, 9 Md. 281; *Kuykendall* v. *Devecmon*, 78 Md. 543. In view of this settled policy of our law and the statutory limitation, to which we have referred, upon an executor's power of sale and

the notice imparted to Alexander as purchaser of the mortgage it must be held that he took no legal title to it under the assignment from Wirt nor acquired by his supposed purchase any equitable claim upon the proceeds of sale superior to that of the parties interested in Mr. Pearce's estate or those entitled to stand in their place.

The Fidelity and Deposit Company contends that having made good to the persons entitled to Mr. Pearce's estate the loss suffered by them from the defalcations of the executor, it is entitled to be substituted to their rights and claims against the executor as well as against the assets wrongfully diverted by him.   The company claims to be so entitled as well upon the general principles of subrogation as applied to sureties who have made good the losses included within their contracts of indemnity, as upon the terms of the settlement made of the suit on the executor's bond in the present case.

The operation of the general equitable doctrine of subrogation in favor of a surety, who has paid the debt of his principal, by which he becomes entitled to all the rights and remedies of the creditor against the principal debtor and all liens and securities to which the creditor could have resorted for the payment of his debt, has received such full consideration and discussion at our hands in the recent case of the *American Bonding Co.* v. *Nat'l Mechanics Bank,* 97 Md. 598, that we deem it unnecessary to again review that subject in the present case where it is not essential to rely entirely upon that doctrine to sustain the company's claim.

The order of the Circuit Court, authorizing the settlement of the suit against the Fidelity Company on Wirt's testamentary bond, directed the plaintiff, Morrow, trustee, who as such represented all parties claiming under Mr. Pearce's will, to transfer to the company all of his claims to the Groome mortgage.   The record does not show whether the assignment of the mortgage to the company was actually made, but for the purposes of this case equity will regard it as having been made.   The acquisition thus made by the company, of the rights of the persons entitled to Mr. Pearce's estate under his

will, establishes the validity of its claim to the $3,371 of the fund in Court applicable to the payment of the mortgage, and it becomes unnecessary to rely solely in its behalf upon the doctrine of equitable estoppel.

It is also contended on behalf of Alexander that the company was not liable on the bond of Wirt because, at the time he transferred the mortgage to Alexander, it was in his hands as trustee and not as executor, and that, therefore, the company in paying the loss was a mere volunteer and no right of contribution arose from the payment. As there was no formal trust created by Mr. Pearce's will and Wirt was not designated a trustee therein, this contention in effect is, that the retention of the mortgage by Wirt so long after the time prescribed by law for the administration of the estate was beyond the time and scope of his duty as executor, and he must be regarded in that connection as a trustee by implication of law. Whatever effect that situation might have had upon the operation the doctrine of equitable estoppel in favor of the company, no impairment results therefrom of its right to the proceeds of the mortgage *as assignee* of the claims thereon *of the parties entitled to Mr. Pearce's estate under his will.* Alexander took no title to the mortgage, as against the devisees of Mr. Pearce, under the assignment of it from Wirt, whether the latter be regarded as having held it as executor or trustee.

We therefore think the learned Judges below were right in holding that the Fidelity Company was entitled to receive the proceeds of the mortgage, but we are unable to agree with them in deducting from those proceeds and awarding to Alexander the sum of $358 on the theory that the company having settled its liability as surety by the payment of a sum less than the face value of the loss, should suffer a *pro rata* deduction from the amount of its recovery. That theory might have found place in determining the extent of a mere equitable subrogation of the company but it has no bearing upon its rights as assignee of the entire claim of the devisees under Mr. Pearce's will to the proceeds of the mortgage.

The order appealed from will be affirmed in so far as it es-

tablishes the right of the Fidelity Company to the $3,371 of the fund in Court applicable to the payment of the mortgage in question, but the portion of the order directing the deduction from that amount of the sum of $358 and allowing it to Alexander must be reversed.

> *Order affirmed in part and reversed in part, and the case remanded for further proceedings in conformity with this opinion, each party to the appeals to pay its own costs.*