Gaston,
 

 Judge, after stating the case as above, proceeded. — The cause has been
 
 brought to
 
 a hearing only as against the defendant Morris, and the alleged purchaser under him. Whether the plaintiffs will ask for any relief against the executors we know not. Our decision on the case as heard, will not prejudice such an application if they should hereafter make it.
 

 The bill must be dismissed, and dismissed with costs against the defendant Twitty. He has denied by his' answer, that any of the negroes were conveyed to or holden by him, and there is no proof that they were.
 

 The first ground on which the plaintiffs rest their claim against the defendants Morris and Rowland, will not avail, unless they can make out a case of fraud in the defendant Morris. However inattentive the executors may have been to the injunctions of their testator, or however remiss
 
 *561
 
 in the performance of their duties, the debts of the testator were nevertheless to be paid by them, and their power to dispose of the estate of their testator, for the purpose of meeting these demands was complete. It is the general rule of equity as well as of law, that an executor has the absolute power of disposal over the whole personal effects of his testator; and that it is not incumbent on the purchaser of the assets, to see the money raised by the disposition of the assets properly applied. In the language of Lord Thuklow,
 
 (Scott
 
 v.
 
 Tyler,
 
 2 Dick. 725,) “ his title is complete by sale and delivery ; and what becomes of the price is of no concern to him.” Fraud, however, will vitiate every transaction, and therefore in the language of the same eminent judge “ if one
 
 concerts
 
 with an executor by obtaining the testator’s effects at a nominal price, or at a fraudulent undervalue, or by applying the real value to the purchase of other subjects for his own behoof, or in any other manner contrary to the duty of the office of executor,
 
 such concerts
 
 will involve the seeming purchaser or pawnee, and make him liable to the full value.” This
 
 concert
 
 or collusion between the executors and Morris, to enable the former to commit a
 
 devastavit
 
 of the assets, the plaintiffs have utterly failed to establish. Morris was indeed aware of the dispositions contained in the will of their testator, but
 
 these
 
 did not contain a peremptory injunction to sell the land ; and if they had, did not take away the power of the executors to sell the personal property for the payment of debts. The will indeed directed that the negroes should be kept together or hired out, and that the hire should be applied to the discharge of his debts. But the time had come when these debts must be paid off — although no such funds had been prepared for discharging them as the testator contemplated — and when there was no other means of meeting the exigency, than by a sale of part of the estate. There is no evidence of any contract or agency of Morris in bringing about this state of things. A sale was then necessary, and it must be made either under execution or by the executors. The latter had a right to sell, and those who dealt with them in the exercise of that right, unless dealing collusively, are
 
 *562
 
 not liable to be called to account for the past misconduct of the executors, "which induced the necessity of a sale. There is no allegation in the bill, that the negroes were obtained by Morris at a fraudulent undervalue. If there had been, it would have been disposed of by the testimony which establishes that they were sold at fair prices, and próbably for more than could have been obtained at pub-1¡C auction. It cannot be pretended that a sale by an oxecutor is invalid, either in law or equity, because not mac^e at Publ>c auction, nor under an order of Court specially granted for that purpose; the most that can be reclu*red fr°m the purchaser under such circumstances, is to repel the presumption that he may have bought at an undervalue. The charge that the sales were made for the private benefit of the executors, or of either of them, and not with a view, or for a purpose connected with the administration of the assets, is not proved. All the evidence tends to establish that it was
 
 professedly
 
 made to raise money to pay off the debts of the estate; a considerable portion of it was unquestionably applied directly to that purpose; and there is no evidence to show that any part of it was misapplied to other purposes. Under these circumstances, more especially as it is apparent that the purchases were made by Morris with the knowledge of the family, one of whom, the complainant Evalina, was then of full age, and the others nearly of age; and as no attempt was made to impeach these purchases, until nine years after the last took place, we have no hesitation in saying, that the first ground on which the claim to our interposition rests, is wholly unsupported.
 

 A prívate by an exec-c¡t0tt°fthf his testator order oftho County valiJ11S unless im-fKmd,ed f°r
 

 The plaintiffs further allege, that in truth the conveyances made by the executors, were intended but as securities for refunding moneys loaned by the defendant Morris. There is little or no doubt in regard to the facts in relation to this charge. In 1822, the negro Reuben was conveyed to the defendant Morris by an instrument which, however unskilfully written, did amount but to a security •for the repayment of three hundred and twenty-six dollars ■then advanced to the executors. In April 1824, a similar conveyance was made of the negro Patrick, for the repay
 
 *563
 
 ment of nine hundred dollars then advanced. On the 12th of July 1834, Katy the wife of Patrick and her two infant children, were sold absolutely at the price of five hundred dollars; a further sum of eighty dollars was advanced to make up the price of Reuben four hundred dollars, and a formal release was executed by the executors of the equity of redemption, with respect to Reuben and Patrick, so as to convert the
 
 pledge
 
 of them into an absolute transfer. The same principles which hold in the sale of assets by an executor, apply to a pledge of them.
 
 Mead
 
 v.
 
 Orrery,
 
 3 Atk. 239.
 
 Scott
 
 v.
 
 Tyler,
 
 2 Dickens, 725.
 
 M‘Leod
 
 v.
 
 Drummond,
 
 17 Ves. Jun. 154. He has the power to pledge or sell, and the pawnee or vendee is not responsible, beyond the terms of his contract, except by reason of covin, and improper concert with the executor. The change of the pledge into'a sale must be tested by the same principle. The pawnee has a right by enforcing his pledge, to compel the payment of his debt; and if by agreement with the executor, the thing pledged be taken in absolute property in payment of the debt, the validity of that transaction must depend on the good or bad faith in which it was done. We see no indications of collusion in the transaction ; and therefore from the date of it, the property was not holden as a security for a debt, but the debt was paid off by a sale of the property.
 

 It is therefore the opinion of the Court, that the bill must be dismissed against the defendants Morris and Rowdand, and with costs. It will be retained a reasonable time to see whether the plaintiffs will move against the other defendants. If they do not in the course of the next term, the bill will stand dismissed altogether, but as to the latter defendants without costs.
 

 Per Curiam. Decree accordingly.