WILLIAM J. ALBERT, and EMILY J. ALBERT his wife, *vs.* THE MAYOR AND CITY COUNCIL OF BALTIMORE, SAMUEL JONES, and the SAVINGS BANK OF BALTIMORE.

Upon a suit in chancery to procure a division of the residuary estate of a testator among the legatees in the will, a decree was passed, directing the executors to hold, as trustees, $6,300 of six per cent. stock, of the city of Baltimore, in trust, for the sole and separate use of a daughter of the testator, and one of the *cestui que trusts* in the will. HELD:

That this decree was not, by force of the act of 1785, ch. 72, sec. 13, notice to the city of the will of the testator, and of the interests of the *cestui que trusts* under it, as ascertained by the decree.

The mere fact that a bank permitted stock, which stood in the name of a testator, to be transferred by the executor, furnishes no ground of complaint against the bank, though it turns out that the executor was, by the act of transfer, converting the property to his own use.

A party dealing with an executor is not bound to inquire into his object nor liable for his misapplication of the money, for an executor may sell or raise money in the regular execution of his duty.

But if a party dealing with an executor, has, at the time, *reasonable ground* for believing that he intended to misapply the money, or is in the very transaction applying it to his own private use, the party so dealing is responsible to the persons injured.

The facts that stock on the books of a corporation once stood in the name of certain persons, " as executors," and was afterwards, by their act, transferred to themselves " as trustees," in connection with the privilege to *Mrs. A.* to draw the dividends until the authority should be withdrawn; are

wholly inadequate to affect the corporation with notice and render it liable for the loss resulting to the *cestui que trusts* from the act of allowing the trustees to transfer the stock.

The mere designation of the parties in whose name the stock stood, as "trustees," without a specification of the trust, or description of the *cestui que trust*, could not give the corporation any information, nor make it liable to restore the stock which was transferred by the trustees and applied to their own use.

A trustee transferred stock, standing on the books of a corporation, in his name, as "trustee," to a bank, of which he was a director, as security for a loan of money made to him by said bank. The bank denied all knowledge of the trust, and the transfer was in the usual form of proceeding in such transactions. HELD: That independent of the provisions of its charter, the bank would have a perfect title to the stock so obtained.

But the charter of the bank prohibited the loan of any of its funds to any director. HELD: That the transfer of this stock for the security of such a loan, vested in the bank no title to the stock, and that it was liable to the parties injured by such transfer.

A loan to a director, where the bank has no power to make it, could not be recovered by the bank, and such loan, and any security taken for it, would be void.

The manifest design of the legislature was, to prevent any of the directors of the bank from applying to their use its deposits; and a director cannot defeat this design by applying for a loan under a name different from his own, but which at the time of his application was known to indicate a commercial house, of which he was a partner.

It is the duty of courts of justice to effectuate the purposes of the legislature, and not to thwart them.

A loan made by such a bank to a corporation, of which one of its directors was a stockholder, would not be void.

When a person becomes a partner in a private mercantile firm, he does not lose his individuality, as he does, so far as the transactions of the corporation are concerned, when he becomes a stockholder.

Though the contract has been executed, and though the trustee might be estopped from denying the legality of the transaction, yet it does not follow that the rights of his *cestui que trust* are thereby concluded.

The law imputes a knowledge to the bank, that in making the loan it was acting in violation of its charter, and if any injury has resulted to third parties from its illegal acts, it should be held liable.

A corporation has no power to do what it is inhibited by its charter from doing, and if, in violation of its charter, injury should be done to the property of a third person, it is liable.

The transfer, by the trustee, was a wrong on the rights of the *cestui que trusts*, and if the bank, in violation of its charter, aided him in the perpetration of the fraud, there is no reason, either of public policy, or in law, which should exempt it from responsibility for the injury occasioned by its co-operation.

APPEAL from the court of chancery.

This appeal was taken by the appellants from a decree of the chancellor, dismissing their bill, passed on the 16th of July, 1849. The bill was filed on the 29th of May 1847, and its averments, together with those of the several answers, and the facts and proofs in the case will be found fully stated in the arguments of counsel, and in the opinion of this court, delivered by Le Grand, C. J., and also in the opinion of the chancellor, Johnson, accompanying his decree dismissing the bill, reported in 1*st Md. Ch. Decisions*, 407.

The cause was argued before Le Grand, C. J., Eccleston and Tuck, J.

*Reverdy Johnson, Jr.*, and *J. Mason Campbell*, for the appellants, contended:

1st. That the decree of the 6th of November 1841, by force of the act of 1785, ch. 72, sec. 13, was notice to the city of the will of Talbot Jones, and of the *cestui que trusts* to the stock in question. *Ferebee and Procton*, 2 *Devereux and Battles*, 449.

2nd. That if the decree was not notice, yet, that the stock having originally stood upon the books of the corporation, in the names of Samuel and Andrew D. Jones, as executors of Talbot Jones, the city was thereby affected with notice of the will of Talbot Jones, and of the *cestui que trusts* named in it; and that the transfer of the 16th of October 1845, to which it assented, was a breach of trust. *Lowrey vs. The Commercial and Farmers Bank of Baltimore, Circuit Court, U. S.*, 1848. 1 *Story's Equity*, sec. 400. 2 *Vernon*, 384, *Ferras vs. Cherry. Ambler*, 311, *Mertins vs. Jollifee.* 2 *Vernon*, 662, *Draper's Co. vs. Yardley.* 4 *Madd.*, 190, *Keane vs. Roberts.*

3d. That having notice of the will, and having, from January 1842 to October 1845, paid dividends on this stock to Mrs. Albert, the city had notice that she was the *cestui que trust* under said will, of the stock in question; and that the transfer of October 1845 was a breach of trust. 5 *Gill*, 336,

21     v.2

*Farmers and Mechanics Bank, vs. Wayman and Stockett. Hardy vs. Summers,* 10 G. & J., 316.

4th. That although from November 1841, to October 1845, the stock stood in the name of Samuel Jones and Andrew D. Jones, as trustees, yet during all that time the dividends were paid upon the order of those persons, as executors, and the city thus having notice, that they, as executors, were interested in the stock, was in default in permitting a transfer without the order of the orphans court, under the act of 1843, ch. 304, and is liable for the consequences in this suit. *Lowrey vs. The Commercial and Farmers Bank of Baltimore, Circuit Court, U. S.,* 1848.

5th. That the fact that the stock stood in the names of Samuel and Andrew D. Jones, as trustees, on the books of the city, was sufficient notice to it of the trust affecting the stock, even if it did not know who the *cestui que trust* was, and it was at its peril that it permitted a transfer without inquiry, whether it was made *bona fide* for the purpose of the trust. *Walsh vs. Stille,* 2 *Parson's Select Eq. Cases,* 23. *Mechanics Bank vs. Seton,* 1 *Pet.,* 299. *Christmas vs. Mitchell,* 3 *Ire. Ch. Rep.,* 535. *Stockdale vs. South Sea Co., Barnardiston Chy. Rep.,* 363. 1 *Murphy, N. C., Rep.,* 223, *Maples vs. Medlin.*

6th. That if actual notice of the *cestui que trust* be requisite the city had it in the order for the payment of the dividends to Mrs. Albert, and her receipt of them for years, and is liable to her.

7th. That the very fact of the transfer to the Savings Bank, one of the great money lenders of Baltimore, of stock which had stood so many years in the names of fiduciaries, and the dividends of which had been enjoyed all that time by a married woman, under a will which gave no power of disposition of the stock to her or to the trustees, was, of itself, a suspicious circumstance, and enough to have put the city, which was cognizant of the will, upon inquiry, and the consequences of its failure to make the inquiry ought to be visited upon it. *Price vs. McDonald,* 1 *Maryland Rep.,* 403. *Murray vs. Ballou,* 1 *Johns. Ch. Rep.,* 575, 577, 581. *Hill vs. Simpson,* 7 *Ves.,* 170. *De Bouchout vs. Goldsmid,* 5 *Ves.,* 211.

8th. The knowledge of Jones, that the stock in question was trust property, and that he was misappropriating it, was, under the circumstances of this case, the knowledge of the Savings Bank, and it had notice otherwise. *Porter vs. Bank of Rutland,* 19 *Verm.,* 410. *Story on Agency,* 131, 132. *Paley on Agency,* 262. *Angel and Ames on Corporations,* 241. 2 *Hill,* 451, *Bank of U. S. vs. Davis.*

9th. It being proved that the stock in question was transferred to the Savings Bank, the bank cannot hold it without making out a good title thereto, as against the complainants, which it cannot do, as the contract under which it took the stock and holds the proceeds thereof was in violation of its charter. Act of 1818, ch. 93. 7 *Wend.,* 31, *Life Ins. Co. vs. Mechanics Fire Co. Dandridge Case,* 8 *G. & J.,* 248. 2 *Spences Eq. Juris.,* 733, *Equal Equity.* 2 *Story's Eq.,* sec. 1502, *note.* 11 *Seargeant and Rawle,* 164.

*Archer Ropes* and *William Schley* for the Mayor and City Council of Baltimore, after stating that it was clear from the pleadings and the evidence, that the officers of the city of Baltimore had no knowledge of the trusts of the will of Talbott Jones, and no knowledge of the decree in chancery of the 6th of November 1841; and that Mr. Albert had knowledge of the transfers, if not before, at least soon after they were made, and that no complaint was made nor any notice given to the city of non-acquiescence until the filing of this bill, insisted:

1st. That Samuel Jones and Andrew D. Jones had legal power to make the transfers, notwithstanding the certificates were issued to them as "trustees," and that the register was not only *not bound,* but *had no right* to inquire, on what consideration or for what purposes the transfers were made. *Davis vs. Bank of England,* 9 *Eng. C. L. Rep.,* 444. *Lewin on Trusts,* 86, 88, and cases in notes there cited. *Bank of England vs. Moffatt,* 3 *Bro. Ch. Cases,* 260. *Hartga vs. Bank of England,* 3 *Ves.,* 55. *Bank of England vs. Parson,* 5 *Ves.,* 665. *Bank of England vs. Lunn,* 15 *Ves.,* 569.

*Field vs. Schuffler,* 7 *John's Ch. Rep.,* 150, and cases cited by the chancellor in his opinion in that case.

2nd. Even if it would have been the duty of the officers of the city, in case of knowledge or suspicion on their part, that the transfers were made in violation of their duty as trustees, and that their act amounted to a *breach of trust,* yet there is no proof of such knowledge or suspicion, or of any facts from which either can be inferred.

3rd. As the officers of the corporation had no notice in fact of the provisions of the decree, of the 6th of November 1841, or even of its existence, its existence is not constructive notice of its contents. 1 *Story's Eq. Juris.,* secs. 406, 408. *Worsley vs. Earl of Scarborough,* 3 *Atk.,* 392.

4th. There was nothing in the order in favor of Mrs. Albert, which gave notice to the officers of the city that the stock was held in trust for her benefit; on the contrary, the terms of the order exclude the idea of any right whatever on her part in the *corpus,* and as the order is revocable at their mere pleasure, it is, in its terms, inconsistent with the notion of a vested right on her part, even in the interest, and the very fact that the order thus limited is signed by them *as executors* and not as trustees, (if not imputed to mere accident,) would negative any inference, that she was interested in *the trust,* or that her rights as executors extended beyond the right to the accruing interest during their pleasure. The order here referred to is as follows: "We hereby authorise and empower Mrs. Emily J. Albert, or order, to draw the interest on six thousand and three hundred dollars of city of Baltimore six per cent. corporation stock, standing in our names as trustees until this power is withdrawn." Signed— "Samuel Jones, Jr., Andrew D. Jones, executors." And on the back thereof is the following endorsement: "Baltimore, December 10th, 1841, pay to the order of William J. Albert." Signed—"Emily J. Albert."

5th. There is enough shown to justify the inference of previous consent to the transfers, or subsequent acquiescence on the part of the complainants. If not, yet the omission to give

prompt notice of the alleged breach of trust was *gross laches*, and should produce the same result as positive assent. *Lewin on Trusts*, 641. *Walker vs. Symonds*, 3 *Swanston*, 80, and notes there. *Brice vs. Stokes*, 11 *Ves.*, 326.

*Samuel J. Donaldson* and *Reverdy Johnson, Sen.*, for the Savings Bank of Baltimore, contended:

1st. That by the transfer of the stock of the city of Baltimore, by Samuel Jones and Andrew D. Jones, the bank became the legal owner of the stock, and was not bound to inquire into the regularity of said transfer, as the bank had no knowledge of said stock having been held by the said Jones as trustees for any other person. 7 *G. & J.*, 306. 5 *Gill*, 356. 9 *Eng. C. L. Rep.*, 444. 7 *John's Ch. Rep.*, 150. 2 *Atk.*, 121. 17 *Ves.*, 152.

2nd. That making a loan on the certificates of the city authorities of their indebtedness to said bank, to the firm of Talbott Jones & Co., there was no violation of the charter of said bank, although Samuel Jones was a director of said bank, and also a member of said firm, the bank believing that he was not the sole member of said firm.

3rd. That if said loan should be construed to be a violation of the charter of said bank, it cannot be drawn in question by the complainants in this proceeding, as they could have no greater right than Jones, who could not recover the stock without paying the debt.

Le Grand, C. J., delivered the opinion of the court.

It appears from the proceedings in this case, that Talbot Jones, a citizen of Baltimore, in the year 1834, died seized and possessed of a considerable estate; that he made a will and appointed his two sons, Samuel and Andrew D. Jones, as his executors, and that among the objects of his bounty was his daughter Emily, one of the complainants.

The bill states, that by virtue of a decree of the high court of chancery, passed on the 6th November 1841, in a suit instituted to procure a division of the residuary estate of Tal-

bot Jones among the legatees designated in his will, it was ordered that $6300 of six per cent. stock of the city of Baltimore should be set apart and held by Samuel Jones, Jr., and Andrew D. Jones, as trustees, in trust, for the sole and separate use of Emily J. Albert.

The bill alleges, that this decree was made known to the proper officer of the corporation of Baltimore city, and, in pursuance of said decree, the stock was entered on the city's books in the name of Samuel and Andrew D. Jones, as trustees, and so remained until the 16th October 1845, when the trustees transferred it to the Savings Bank of Baltimore; that at the time of the transfer, the bank knew the stock stood on the books of the city, in the name of Samuel and Andrew D. Jones, as trustees, and if any consideration passed for the transfer, it was a loan made by the bank of part of its deposits to Samuel Jones, in his individual name, or by his mercantile style of Talbot Jones & Co., which was known to the bank to be his mercantile style, and it was also aware at that time he had no partner in the business carried on in the name of Talbot Jones & Co. It charges, that at the time of the loans, Jones, to whom they were made, was a director in the Savings Bank, and that they were made in violation of its charter, which prohibits loans to any of its directors. The death of Andrew and the insolvency of Samuel Jones is alleged, and decree prayed, entitling the surviving trustee to $6300 of six per cent. city stock, for the use of the complainant, Emily J. Albert; that the transfer to the Savings Bank be declared void, and to pass no title, and the city and bank be decreed to refund all the dividends that may have accrued on the stock since the 16th October 1845.

Both the city and the bank deny all knowledge of the contents of the will of Talbot Jones, and of the decree of the court of chancery, and the bank, in addition, denies all knowledge of the fact, that Samuel Jones traded without a partner, under the style and name of Talbot Jones & Co.

The above summary of the principal, averments of the bill and answers, is sufficiently full to present the questions this court is called upon to consider and decide.

It appears from the proceedings, that the stock, which is the subject of the controversy, did not belong to the estate of Talbot Jones at the time of his decease, but that it was subsequently purchased by the executors, and stood on the city books in their name *as such*, until it was transferred by them, as executors, to themselves, as trustees.  On the 10th of December 1841, Samuel Jones and Andrew D. Jones, as *executors*, authorised Emily J. Albert, or order, to draw the interest on the stock standing in their names as *trustees* until the power should be withdrawn, and, on the same day, she directed the same to be paid to her husband, one of the complainants.

On this state of facts, it is contended, the city is responsible for the misapplication of the private estate of Mrs. Albert. This supposition rests on the hypothesis, that the decree of the 6th of November 1841, by force of the act of 1785, chap. 72, sec. 13, was notice to the city of the will of Talbot Jones, and the interests of *cestui que trusts* under it, as ascertained by the decree; or, on the idea, that as the stock having originally stood upon the books in the names of Andrew and Samuel Jones, as executors, the city was, by force of that fact, affected with notice of the will and of the *cestui que trusts* named in it, and that the transfer of the 16th of October 1845, to which it assented, was a breach of trust.

We are of opinion, that the section of the act of 1785 is not available in this case for the purpose for which it has been cited.

In support of the proposition, that the city is responsible for the misappropriation of the stock by Samuel Jones, the counsel for the appellants cited many authorities.  We do not deem it necessary to enter into an examination of them, because the principles which they announce had been very clearly evolved by the learned chief justice of the United States, in an opinion pronounced by him in a case, in many particulars, like the one now before this court.  We allude to the decision in the case of *Lowrey vs. The Commercial and Farmers Bank of Baltimore*, and others, to be found reported in the 3rd vol. of the *Bankers Magazine*, *page* 201.

The principles recognized by the court in that case seem to us to be founded in sound policy, and fully sustained by the authorities; and we therefore adopt them, so far as they are applicable to the case before us.

It was a case growing out of a breach of trust on the part of an executor, the will and executor being the same to which reference is had in this suit. In that case, a certain number of shares of bank stock belonging to the estate of Talbot Jones, were transferred by the executor, Samuel Jones, to another bank, as security for a loan which he had procured for his own use.

The learned court held the particular circumstances of that case sufficient to affect the bank on whose books the stock stood, with all the consequences of notice of the trust, and, therefore, whilst the transferee took a good title, the bank, through the negligence of whose officers the fraud was permitted to be perpetrated, was held responsible for the misapplication of the stock.

In the case before us, however, we are unable to perceive any circumstances which affect the city with such notice of the trust, or with the purposes of Jones in making the transfer, so as to render it liable to a decree for restitution.

In the case to which we have already referred, the court say: "Undoubtedly, the mere act of permitting this stock to be transferred by one of the executors, furnishes no ground for complaint against the bank, although it turns out that this executor was, by the act of transfer, converting the property to his own use. For an executor may sell or raise money on the property of the deceased, in the regular execution of his duty, and the party dealing with him is not bound to inquire into his object, nor liable for his misapplication of the money. Such is the doctrine in the English courts, and would seem to have been the law of this State previous to the act of Assembly of December session 1843, ch. 304, and the transaction now before us took place before that act went into operation. But it is equally clear, that if a party dealing with an executor, has at the time *reasonable ground* for believing that

he intended to misapply the money, or is in the very transaction applying it to his own private use, the party so dealing, is responsible to the persons injured." For this doctrine the court refer to the cases collected and commented on in the cases of *McLeod vs. Drummond,* 17 *Vesey,* 152, and *Field vs. Schiefflin,* 7 *John. Ch. Rep.,* 150.

These being the principles which must govern the decision of the question as to the liability of the city, the next inquiry is: are there any circumstances in the case before us which furnished *reasonable ground* to the officer of the city to suspect that Jones was about to commit a breach of trust, by appropriating the city stock to his own private use?

If any exist, they are to be found in the record entries; and they are, that the stock once was in the name of Samuel and Andrew Jones, as executors, and afterwards, by their act, transferred to them as trustees; these, in connexion with the privilege to Mrs. Albert to draw the dividends until the authority should be withdrawn, constitute all the facts on which the presumption of reasonable grounds for knowledge, or suspicion of the purposes of Jones, can be placed. We think them wholly inadequate to sustain the theory of the appellant. The register of the city—the officer charged with the custody of the records of the public stock of the city—expressly declares, he had no knowledge that the transfers of the stock were made to the two Jones' as trustees, because of a decree of the court of chancery; and that it was, and had been, the uniform practice of the office, to transfer stock standing in the name of trustees on the endorsement of such trustees.

We have seen, *that the mere act of permitting the executors to transfer the stock, could furnish no ground of complaint against the city,* and the question, therefore, is, could any arise out of the mere act of allowing the trustees to transfer? The same doctrine is applicable to both cases, for there is no difference in principle between them. We attach no importance to the authority given to Mrs. Albert, to take the dividends. By its very terms it was revocable at the pleasure of the parties who gave it. And the authority to her to take the

22    v.2

dividends, was as well calculated to arouse the suspicions of the register of the city as to its propriety, as the transfer to the Savings Bank, to suggest, the purpose of Jones to apply the stock to his own uses. The mere designation of the parties as trustees, without a specification of the trust, or designation of the *cestui que trust*, could not possibly give the city officer any information, and had he made inquiry in regard to the object and purposes of the trust, there was no one to whom he could with propriety apply but to the trustees themselves, for the entry on his books gave him no clue whatever. A reference to the will of Talbot Jones would have given no information on the subject, for it was silent in regard to the particular stock in question; in fact, it was purchased by the executors subsequently to his death. For these reasons we concur in opinion with the chancellor, that there was not such knowledge on the part of the city of the designs of Samuel Jones, or such neglect of duty on the part of its officers, as to make it liable to restore the stock or its equivalent in value. The next question is, as to the responsibility of the Savings Bank? Independently of the provisions of its charter, we are clear in the opinion, the circumstances under which it obtained the stock would have given it a perfect title. As is very justly remarked by the court, in the case of *Lowrey vs. The Commercial Bank*, "A transfer of stock cannot be likened to an ordinary conveyance of real or personal property. The instrument transferring the title is not delivered to the party. * * * The party to whom it is delivered, rarely, if ever, sees the entry, and relies altogether upon the certificate of the proper officer, stating that he is entitled to so many shares." In the case before the court, the bank denies, explicitly, all knowledge of the trust, and there was nothing in the manner of the transfer different from the usual course of proceeding in such transactions, which are of hourly occurrence in a large commercial city like Baltimore, where stocks are the subjects of sale and of hypothecation.

But the real difficulty in the case of the bank grows out of its charter. The second section of the act of 1818, chapter

93, provides, that the " corporation shall not be authorised to make any bills or notes in the nature or description of bank notes, or *to loan any part of the funds deposited to any director of said corporation.*"

At the time of the loans to Samuel Jones, by the bank, and the hypothecation by him of the city stock, he was a director of the bank, and the question arises, whether the transactions had with him touching the stock in question, vested in the corporation, under its charter, any title to the stock?

It cannot be denied, that a loan to a director could not be recovered, the bank having no power to make it.   Such loan and any security taken for it, would be void.   3 *Wendall,* 574.   But it is said, the loans were not made to a director, but to a firm of which he was a member, and that, to give such a construction to the charter of the bank as would inhibit it from loaning any portion of its deposits, to a company, of which one of its directors might chance to be a member, would be productive of consequences of an alarming character.   However this may be, we do not feel ourselves called upon to disregard what we conceive to be the clearly expressed purpose of the legislature. Its policy, in this particular, is as much the law for our government, as it is for that of the corporation which is the creature of its power.   We cannot disguise from ourselves the manifest purpose of the legislature, to prevent any of the directors of the bank from applying to their use its deposits, and if we were to sanction the doctrine, that any director could avail himself of the advantages of loans by procuring them in the name of a firm instead of his individual name, we should defeat the very object which the legislature had in view when it authorised the establishment of the bank.   No better case could be adduced to show the unsoundness of the construction contended for on behalf of the bank, than the one now before the court.   It is admitted on all sides, that Samuel Jones, as such, could not, under the charter of the bank, obtain a loan of any of its deposits; and yet, if the views of counsel be correct, he could obtain it by applying for the loan under a name different from

his own, but which, at the time of his application, should be known to indicate a commercial house, of which he was a partner, if not the only one constituting it. Such a state of things cannot receive the sanction of a court of justice, whose duty it is to effectuate the purposes of the legislature, and not to thwart them. But it is urged, such a construction as we have given to the charter would render void any loan which might be made by the bank to a corporation, of which one of its directors might be a stockholder. Such a consequence by no means follows from what we have said. The distinction between a private mercantile firm and a corporation is obvious, and exists in this: that when a person becomes a partner in the transactions of a commercial business he does not lose his individuality, whilst he does, so far as the transactions of the corporation are concerned, when he becomes a stockholder. "A corporation," says Chancellor Kent, 2 *Vol. Com.*, 266, "is a franchise possessed by one or more individuals, who subsist as a body politic, under a special denomination, and are vested, by the policy of the law, with the capacity of perpetual succession, and of acting in several respects, however numerous the association may be, as a single individual."

But it is urged, that conceding the bank had no power, under its charter, to make the loans to Samuel Jones, and to receive as security for the same an hypothecation of the stock, yet, inasmuch as the contract has been executed, it is now too late to object. To this reasoning we cannot assent. It is true, Jones might be estopped from denying the legality of the transaction, but it does not therefore follow, that the rights of his *cestui que trust* are also concluded by what has been done.

If what the bank did was illegal, no valid defence can be deduced from it against the party who has been injured by its acts. The bank ought to have known—and the law imputed such knowledge to it—when it was making the contract, that it was acting in violation of its charter, and if any injury accrued to a third party from its acts, in justice, it should be held liable. Any other view would sanction the

doctrine, that a creature of the law, with but limited powers, by an usurpation of power, and in defiance of the plain inhibition of the legislature, may enable a fraudulent person to dispose of the property of a third person, without being answerable for so doing. What Jones did, was a wrong on the rights of the appellants, and if the bank, in contempt of the limitation imposed upon it by its charter, aided him in the perpetration of the fraud, there is no reason, either of public policy, or in law, which should exempt it from responsibility for the injury occasioned by its cooperation. To announce any other doctrine, would be to proclaim a perfect immunity to the bank to assist in the infliction of wrong, provided all knowledge of its unauthorised acts be kept from the party to be injured, until the injustice should be complete.

We hold, that a corporation has no power to do what it is inhibited by its charter from doing, and if, in violation of it, injury should be done to the property of a third party, it is liable. There can be no hardship in such a rule. All that is necessary for it to do, to avoid liability, is to confine itself within the limits prescribed by the law which gives it existence, and defines and regulates the extent and exercise of its delegated powers.

We concur with the chancellor in opinion, in so far as his decree has reference to the city of Baltimore, but dissent from that portion of it which exempts the Savings Bank from liability to complainants for the amount of the stock sold. We will sign a decree in conformity with these views.

*Bill dismissed as to the city of Baltimore, and decree reversed so far as the Savings Bank is concerned.*