## WOOTEN v. RAILROAD.

### (Filed April 9, 1901.)

1. CORPORATIONS—*Transfer of Stock—Liability For.*

> Where a transfer of stock of a corporation is made on its books by an executor, the corporation is fixed with knowledge of the will and its contents.

2. CORPORATIONS—*Wrongful Transfer of Stock by Executor.*

> Where an executor wrongfully transfers specifically bequeathed stock to a purchaser, the corporation would not be liable in the absence of reasonable grounds to believe such transfer was not proper.

3. CORPORATIONS—*Wrongful Transfer of Stock by Executor— Negligence—Proximate Cause.*

> The wrongful transfer by executors of stock in a corporation, making possible subsequent transfers, is the proximate cause of the loss of such stock through such subsequent transfers.

4. LIMITATIONS OF ACTIONS—*Remainders—Stock.*

> The statute of limitations does not run against one holding a remainder in stock, in an action for the wrongful transfer of the same, until the death of the person holding life interest.

ACTION by Edward Wooten and wife Eliza Wooten, R. B. Jewett, W. L. Jewett, Stephen Jewett, Henry B. Jewett and R. D. Jewett against the Wilmington and Weldon Railroad Company, heard by Judge *George H. Brown,* at

January Term, 1900, of NEW HANOVER Superior Court. From a judgment for plaintiffs, the defendant appealed.

*John D. Bellamy,* for the plaintiffs.
*Junius Davis* and *Rountree & Carr,* for the defendants.

MONTGOMERY, J.   This case was heard in the Court below upon an agreed state of facts—those material to the decision of the case being as follows: Eliza Claudia Bradley died in 1854, leaving a last will and testament in which she bequeathed to her son, Charles W. Bradley, 20 shares of capital stock of the Wilmington and Raleigh Railroad Company (now the Wilmington and Weldon Railroad Co.), registered in her own name on the stock ledger of the company, to be held by him in trust for the sole and separate benefit of the testatrix's daughter, Lucy B. Jewett, during her life, and upon her death to the use and benefit of such children as she might leave surviving her.   On December 1 following, Charles W. Bradley and James A. Bradley, the duly qualified executors named in the will, transferred the 20 shares of stock on the books of the company "to Charles W. Bradley, trustee for Lucy A. Jewett," and a new certificate of stock was issued by the company in those words.   In July, 1869, Charles W. Bradley, trustee, transferred the stock to Lucy A. Jewett absolutely—the word "trustee" appearing on the company's transfer ledger after Bradley's name, and a new certificate of stock was issued by the company to Mrs. Jewett individually.   Afterwards, in the same year, 1869, after her husband's death, Mrs. Jewett sold and transferred the stock to other persons absolutely, and new certificates of stock were issued to the purchasers, but the stock can not now be identified, nor its ownership traced.   The stock was not sold by the executors to pay the debts of Mrs. Bradley—the financial condition of her estate not requiring a sale for that purpose.

The defendant company had no knowledge of the condition of Mrs. Bradley's estate, and no actual knowledge of the contents of her will. Mrs. Jewett died in 1898, and the plaintiffs are her children, except the plaintiff Edward Wooten, who intermarried with Eliza Yonge Jewett.

The action is brought to recover from the defendant the value of the stock and the increment by way of dividends which has accrued since the death of Mrs. Jewett.

The question for decision then is this: Does the transfer of the stock of a corporation on the books of the company by an executor fix the corporation with knowledge of the contents of the will? If so, then the transfer of the stock by the executors of Mrs. Bradley to Mrs. Jewett was wrongful, because the trust created in the will in favor of the plaintiffs was not observed in the transfer, and the plaintiff would be entitled to recover the value of the stock and the accrued dividends since the death of Mrs. Jewett. It is incumbent on a corporation to protect the rights of persons interested in the stock of the corporation against unauthorized transfer of the stock. *Cox v. Bank,* 119 N. C., 302; *Lowry v. Bank,* 15 Fed. Cases, 1040. The contention of the plaintiffs is that when the executors of Mrs. Bradley transferred on the books of the company the stock of Charles W. Bradley as trustee for Mrs. Jewett, the company was fixed with knowledge of the *contents* of the will, and that in the transfer the trust in favor of the children of Mrs. Jewett, the plaintiffs, should have been preserved, under the provisions of the will; that the defendant should have seen that the transfer should have been made to Charles W. Bradley, in trust, or as trustee for Mrs. Jewett for her life, and at her death to her children who might survive her. The plaintiffs further contend that the defendant also committed a wrongful and unlawful act in permitting on its books the transfer of the stock by Charles W. Bradley,

trustee of Mrs. Jewett to his *cestui que trust* absolutely, and the transfer by Mrs. Jewett to others.

The defendants insist that, as the stock on the books stood in the name of Mrs. Bradley, the only thing necessary for it to take notice of when an entry of transfer of the stock should be requested to be made on the books, was the exhibition to it of the *letters testamentary* from the proper court by the executors, the transfer to follow as a matter of course according to the directions of the executors; that the executors, so far as defendant's liability is concerned, could have *sold* and transferred not only the stock, notwithstanding it was specifically bequeathed, but that they could have done so even in fraud, provided the company had no reasonable ground to believe that they were acting fraudulently or disposing of the money for their own benefit in the transaction, and that they could have negligently or fraudulently failed to execute the trust imposed by the will upon them in reference to this stock and its transfer, provided the defendant did not have actual knowledge or information which might reasonably put them on their guard concerning the fraud or negligence, at or before the time of the transfer, and on the ground that in law the personal property of a testator is vested in the executor with the right to sell or dispose of it, and that the company was not compelled to take notice of the contents of the will.

The plaintiffs rely principally for authority on the case of *Lowery v. Merchants and Farmers Bank,* decided in the Circuit Court, District of Maryland, at its April Term, 1848, Chief Justice Taney delivering the opinion. In that case the future dividends on a number of shares of stock in the Commercial and Farmers Bank of Baltimore were bequeathed in trust for the complainant during her life and at her death to her daughter Mary, during her life, the executors to receive and pay the same over. The stock and the other property of the testator were bequeathed to the executors in trust for a

number of persons named in the will, subject to the disposition of the stock to the complainant and her daughter. Samuel Jones, one of the executors, transferred, as acting executor, this stock to the Merchants Bank as a security for money lent to the executor who was trading under the firm name of Talbot Jones & Co., by the Merchants Bank; and in default of payment for the debt due to the bank the stock was transferred by a broker and by him sold to pay the debt. Upon these facts the Court said: "The question then is, had the bank (Commercial and Farmer's Bank) at the time of the transfer actual or constructive notice that the executor was abusing his trust and applying his stock to his own use? The bank by its answer denies that it knew anything of the contents of Talbot Jones' will or of the bequest to the complainant, and there is no proof of actual notice; but it did not know that this stock was the property of Talbot Jones at the time of his death, for it so stood upon its own books; and as the transfer was made by Samuel Jones as his executor, the bank must of course have known that Talbot Jones left a will. Although it may not have had actual notice of the contents of the will, yet, as it was dealing with an executor in his character as such, the law implies notice. This is the doctrine in the English Court of Chancery. 4 Madd., 190." And it was further said by the Court that the rule stood upon still firmer ground in Maryland, for every person in that State had constructive notice of a properly registered deed for real or personal property, while in England the weight of authority was perhaps to the contrary, and that "now in Maryland every will of real or personal property is required to be recorded; and if third persons are bound at their peril to take notice of a registered deed when there is nothing to lead them to inquiry, the obligation must be still stronger upon one who is dealing with an executor concerning

the assets of the deceased, for his character of executor of itself gives actual notice that there is a will open to inspection upon the public records. The bank was therefore bound to take notice of the will when this transfer was proposed to be made by one of the executors, and is chargeable to the same extent as if it had actually read it. It was negligence in the bank not to examine it, and if it was ignorant of the contents of the will and of the specific bequest of this stock, it was its own fault. It must be dealt with in this case as if it had possessed actual knowledge that the stock in question was specifically bequeathed by the testator and was not, by the will, to be transferred or in many manner disposed of by the executors, during the lifetime of the complainant, and that it was the duty of the bank during that time to pay the dividends to them in trust for the complainant."

The plaintiffs also cited as supporting the case of *Lowery v. Bank, supra,* that of *Caulkins v. Gas Light Co.,* 85 Tenn.. 683, and *Stewart v. Ins. Co.,* 53 Md., 564. In *Caulkins v. Gas Light Co.,* it was held that knowledge of the *contents* of a will on the part of a corporation is presumed by law from its knowledge of the fact there is a will, upon the terms of which the title to its stock is made to depend. In *Stewart v. Ins. Co., supra,* the Court said: "The fact that Simms and Tyson in making these transfers professed to act as *executors* of Johnson, the deceased stockholder, gave the company or its officers, to whom superintendence of transfers of its stock was committed, actual notice that Johnson left a will which was open to inspection upon the public records, and made the company chargeable to the same extent as if such officers had actually read it and thereby made themselves acquainted with its contents."

In support of its position, the defendant's counsel referred the Court to the cases in our own reports of *Tyrrell v. Morris,* 21 N. C., 559, *Gray v. Armistead,* 41 N. C., 75; *Bradshaw v.*

*Simpson, Ibid.,* 246; *London v. Railroad,* 88 N. C., 384; *Wilson v. Doster,* 42 N. C., 231; to the Bank of England cases on the same subject to *Hutchins v. State Bank,* 12 Metc., 421, especially among other decisions of other State; to Thompson's Commentaries on the Law of Corporatins, Schouler Executors and Administrators; Cook on Corporations and Lowell's Transfer of Stock. We will now examine these citations of the defendant.

We think the cases referred to in our own reports have no application directly to the question to be decided. They are upon a point about which there is no controversy, to-wit, that executors and administrators having the right of property in the personal property of the decedent have therefore the right to sell securities of the estate, and the mere fact of selling is no breach of trust, and a *purchaser* is not liable without actual notice that the administrator intended to misapply the funds or to use them for his own purpose; for the purposes of the estate may require the representative to dispose of it. In 1 Cook on Corporations, section 330, there is a treatise concerning the *sale* of stock by executors and administrators and the rights and duties of corporations in allowing and refusing to allow a registry on the corporate transfer book of the sale of the stock by an executor or administrator, and the concluding part of the section is read: "In general, a corporation has a right to assume that the executor is transferring stock for the purposes of the estate. It is not obliged to inquire into the purposes of the party, nor to investigate whether the transaction is in good faith or fraudulent, nor to examine the will." That seems to sustain the defendant, although the matter treated of is the *sale* of stock, and not the registration of the transfer of stock to a *legalee* and its effect upon the corporation without taking notice of the contents of the will. But the only case cited under that section (*Smith v. Nashville Railroad,* 91 Tenn. 221) is dia-

metrically opposed to the doctrine of the text. In that case, the owner of the stock died testate, but without having named an executor. An administrator *cum testamento annexo* was appointed, and he delivered a part of the stock to a legatee named in the will, absolutely, although she had only a life estate therein, and had the same transferred to the legatee on the books of the corporation. He made the transfer as administrator *simply* without the words *"cum testamento annexo."* The Court said there, "We are of the opinion that upon the facts of this case the corporation is not now liable to an action on this ground. It had no knowledge that there was a will limiting the title of Fannie Baugh to this stock, and there were no circumstances connected with the transfer by Mr. Howe, as administrator, calculated to put it upon inquiry as to the existence or terms of a will. He assigned the certificate standing in the name of his decedent simply as administrator. If he had assigned as administrator *cum testamento annexo* it would have been notice of a will. The assignment was to the "heirs and distributees," not *legatees* of J. W. Baugh. In this respect, the case is to be distinguished from *Covington v. Anderson,* 16 Lea, 310, and *Caulkins v. Gas Co.,* 85 Tenn., 685."

Section 2531 of Thompson's Commentaries on the Law of Corporations contains the broad statement that the "letters testamentary show an apparent right to dispose of the stock of the testator, even though bequeathed specifically; and, on principle, the company is bound to respect his title and transfer them according to his desire." And the cases of *Bayard v. Farmers Bank,* 52 Pa. St., 232, and *Hutchins v. State Bank,* 12 Metcalf, 421, support the text.

The matter embraced in section 351 of Schouler on Executors and Administrators is to the same effect, with a reference to *Bayard v. Farmers Bank, supra.*

But in addition to the authorities cited by defendant's

counsel, they say that the case of *Lowery v. Bank, supra,* when properly understood, is authórity for the defendant, and Mr. Rountree in his brief quotes an extract from the opinion in that case, to-wit: "Undoubtedly the mere act of permitting this stock to be transferred by one of the executors furnishes no ground for complaint against the bank, although it turns out that this executor was by the act of transfer converting the property to his own use, for an executor may sell or raise money on the property of the deceased in the regular execution of his duty; and the party dealing with him is not bound to inquire into his object, nor liable for his misapplication of the money. Such is the doctrine of the English Courts, and would seem to have been the law of this State prior to the act of Assembly of December Session 1843, chapter 304; and the transaction now before us took place before that act went into operation. But it is equally clear that if a party dealing with an executor has at the time reasonable ground for believing that he intends to misapply the money, or is in the very transaction applying it to his private use, the party so dealing is responsible to the persons injured."

But in that part of the opinion last quoted the Chief Justice was considering the matter of a *sale* of the stock by the executor without intending to weaken the force or to affect the correctness of the other doctrine decided in the case, and which we have been discussing, that is, that knowledge by a corporation that there is an executor is knowledge that there is a will, and also constructive knowledge that the contents of the will are known to the corporation.

After mature consideration of all the cases cited and the text in the law books to which our attention has been called, our opinion is:

First. That where a transfer of stock of a corporation is made on its books by an executor, the corporation is

fixed with a knowledge that there is a will, and is chargeable with a knowledge of its contents to the same extent as if the officers had actually read it.

Second. That, notwithstanding such knowledge of the contents of the will, the executor may, even with intent to convert to his own use the money, sell and transfer such stock to a purchaser under the corporation's supervision, and that even though the stock be specifically bequeathed in the will, without liability on the part of the corporation unless it has at the time of the transfer reasonable ground to believe that the executor intends to misapply the money, or is in the very transaction applying it to his own private use.

We have arrived at the conclusion, however, that, as the corporation is fixed with the knowledge of the contents of the will when the executors transfer stock on its books, the provisions of the will in reference to the stock must be carried out in the transfer at the peril of the company in cases where the transferee is a *legatee* named in the will, that is, the corporation must, at the time of the transfer, ascertain whether the transfer is to a *purchaser* from the executor in the usual course of administration and the regular execution of his duty as executor, or to a *legatee* named in the will.

The defendant, for another defence, takes the position that before a recovery can be had the negligence of the defendant must not only be established, but that it must be shown that the transfer by the executor to Charles W. Bradley, trustee for Lucy B. Jewett, individually, was the proximate cause of the loss to the plaintiffs. Mr. Davis, in his brief, says: "But assuming, for the sake of the argument, that the defendant was negligent in this respect, yet it is clear that this was not the proximate cause of the loss to the plaintiffs. The title was in their trustee, and under the law he held it as well for them as for Lucy A. Jewett. No loss was occasioned to them by this transfer, and no injury or damage sprung from

it; and, but for another and subsequent intervening cause, to-wit, the act of the trustee, Charles W. Bradley, in 1869, in transferring the stock to Lucy A. Jewett, none would have occurred."

But the legal title to the stock was not in any trustee of the plaintiffs; it was in Charles W. Bradley, the trustee of Mrs. Jewett, individually. The first transfer, however, was the effective cause of the loss, and the other transfers were steps made possible by the first one which led to the loss even of the identity of the stock or its ownership.

The first transfer was wrongful in that it was the duty of the defendant to have protected the rights of the plaintiffs, and the plaintiffs had the right at the death of their mother to call for a return of the stock or its value. *St. Romes v. Cotton Press Co.,* 127 U. S., 614.

The defendant further sets up the Statute of Limitations against the demand of the plaintiffs. We are not deciding that the plaintiffs had no right to interfere in the transfer of the stock to have it restored to its proper ownership at any time after the wrongful transfer, but they were not compelled to take action for the recovery of the stock or its value until after the death of their mother, which occurred in 1898. This action was commenced in 1899, and is not therefore barred by the statute of limitations.

His Honor rendered judgment upon the facts agreed that the defendant company was liable to the plaintiffs for the value of the stock at the date of the death of Mrs. Jewett, and by consent that the matter be referred to a referee "to hear evidence and take testimony and determine the value of said stock and all other issues of law and fact raised by the pleadings not herein set out and adjudicated, and to determine what sum, if any, the plaintiffs are entitled to recover." There was no error in the judgment of the Court and the same is affirmed.