WILLIAM S. BAKER ET AL. V. ATLANTIC COAST LINE RAILROAD
COMPANY.

(Filed 18 April, 1917.)

1. **Wills—Personalty—Contingent Remainders.**

Personal property may be bequeathed upon successive contingent in-
terests in the same manner lands may be transferred by deed or testa-
mentary disposition.

2. **Corporations—Shares—Transfer—Trusts—Rights of Shareholders—Notice
—Executors and Administrators—Contingent Interests.**

Officials of a corporation upon whose books its shares are transferable
act as trustees for the shareholders, and as such owe them the duty of
exercising care and diligence therein; and where such transfer has been
made at the instance of an executor to a devisee owning a contingent
interest, with limitation over, the officials of the company making the
transfer and issuing the shares thereon, and their successors, are fixed
with knowledge both of the terms of the will and the fact that it was not
done in the proper course of administration, which knowledge is imputed
to the corporation; and the corporation is liable to the ulterior owner,
upon the happening of the contingency, for the value of the shares thus
wrongfully transferred.

3. **Statute of Limitations—Corporations—Transfer of Shares—Contingent In-
terests—Conversion.**

Where a contingent interest in shares of stock has vested by will in the
remainderman after the death of the first beneficiary, and he brings his
action against the corporation wrongfully transferring them, for the stock
or its value within three years of the happening of the contingency, the
action is not for a conversion, and the statute of limitations will not bar it.

CIVIL ACTION, tried before *O. H. Allen, J.,* at November Term, 1916,
of EDGECOMBE.

This is an action to recover four shares of stock, or the value thereof,
bequeathed in item 12 of the will of Moses Baker, the plaintiffs being
the next of kin referred to in said item, tried on the following agreed
facts:

1. Moses Baker died, in 1857, a resident of Edgecombe County, North
Carolina. In August, 1857, his last will and testament, the material
part of which is as follows:

"Item 12th. I give and bequeath unto my grandsons, John Baker
and Jesse Baker, negro man Ben and my 'Ruffin tract of land.' adjoin-
ing the lands of Samuel P. Jenkins, and containing about 200 acres;
also two shares each of Wilmington and Raleigh railroad stock. If
either of them shall die without issue, I give the share of the. one so
dying in all property given or devised to them in this instrument to

the survivor; and if both shall die, leaving no issue, then I give, devise, and bequeath the lands, slaves, and other property to their next of kin, in equal degree, who shall be of the issue of my body, except Naomi Armstrong, wife of Baker Armstrong, and her sister, Martha Ann Baker, it being intended that they or their issue shall under no circumstances inherit any portion of my estate, either directly or indirectly."

The executor therein named, William S. Baker, duly qualified and letters testamentary were duly issued to him.

2. At the time the will became effective, Moses Baker, testator, held and owned nineteen (19) shares of stock, a portion of which was the stock referred to in paragraph 12 of the will, in the corporation, Wilmington and Raleigh Railroad Company, whose name was by act of the North Carolina Legislature changed to Wilmington and Weldon Railroad Company on 14 February, 1855.

3. On 13 November, 1857, William S. Baker, the duly appointed and qualified executor of the will of Moses Baker, as such executor, surrendered certificates for nineteen shares of stock then standing in the name of the testator on the books of the Wilmington and Weldon Railroad Company, the then name of the company, and the said Wilmington and Weldon Railroad Company, at his request, issued new certificates, among which was one certificate for two (2) shares to John Baker and one certificate for two (2) shares to Jesse Baker.

4. The John and Jesse Baker to whom such certificates were issued were the John and Jesse named as legatees in paragraph 12 of Moses Baker's will. That Jesse Baker died in 1863 without issue.

5. Thereafter, and on 12 January, 1866, the certificate for two (2) shares which had been issued to John Baker was delivered to the Wilmington and Weldon Railroad Company by John Baker, and the certificate which had been issued to Jesse Baker for two shares was likewise delivered to the Wilmington and Weldon Railroad Company, and the four (4) shares of stock were canceled on the books of the company and a new certificate or certificates therefor issued and delivered to one John I. Proctor.

6. In 1900 the Wilmington and Weldon Railroad Company was merged in the Atlantic Coast Line Railroad Company, defendant herein.

7. That among the terms of the merger agreement are the following: On 21 April, 1900, by the merger agreement, on page 14, the Wlimington and Weldon Railroad Company conveyed to the Atlantic Coast Line Railroad Company all its property, rights, franchises, etc.; sub-

ject, however, to all existing liens thereon and all the liabilities of the said Wilmington and Weldon Railroad Company of every kind and nature.

8. John Baker died in 1913, leaving no issue.

9. Prior to the commencement of this action, plaintiffs demanded of defendant the certificates of stock above described, and any stock issued in lieu thereof, and all increment, rights, and property accruing thereto, and same has been refused. This action was commenced within one year after the death of John Baker.

Judgment was entered in favor of the plaintiffs, and the defendant excepted and appealed.

*G. M. T. Fountain & Son and Henry Staton for plaintiffs.*

*P. A. Wilcox, F. S. Spruill, John L. Bridges and W. A. Townes for defendant.*

ALLEN, J. At common law the ownership of personal property was absolute and incapable of division into successive interests, but this was modified by the English courts to permit the disposition of such property *by will,* but not by deed, upon the same terms and in the same manner as real property, and this State has followed and adopted the later doctrine. 24 A. and E. Enc., 436 *et seq.,* and cases cited in the note.

The plaintiffs, then, have an interest in the stock in controversy, and their right to recover is dependent upon establishing that the defendant has participated in the wrongful transfer of stock, in which they had an interest, thereby depriving them of their property, and the correct solution of the question involved requires an investigation of the relation existing between the corporation and the stockholder, and of the duty owing by one to the other in reference to the transfer of stock, because if there is no duty there is no liability, and, on the other hand, if there is a duty, which the defendant has failed to perform, causing damage to the plaintiffs, the defendant is responsible.

The usual method of transferring stock is for the holder of the share to indorse thereon a written transfer or authority to transfer, and to deliver the certificate to the transferee, who in turn delivers it to the corporation, which, if satisfied of the genuineness of the signature of the holder and of the identity of the transferee, takes up the old certificate and issues a new one, so that ordinarily a transfer is not completed without the active participation of the corporation.

The corporation is the "custodian of the shares" (*Leury v. Bank,* 131 La., 30) and is a trustee for the shareholder. *Bayard v. Bank,* 52 Pa. St., 235; *Tafft v. R. R.,* 84 Cal., 131; *Leury v. Bank,* Anno. Cases, 1913 E, 1174; *Cox v. Bank,* 119 N. C., 302.

The Court says in the case from Pennsylvania: "That a bank or other corporation, and also these defendants, are trustees to a certain extent for stockholders—that is, for the protection of individual interests—cannot be denied. They are alike trustees of the property and of the title of each owner. They have in their keeping the primary evidence of title, and they are justly held to proper diligence and care in its preservation. From this it results that they may rightfully demand evidence of authority to make a transfer before they permit it to be made. Their own safety requires that they be satisfied of the right of the person proposing to make a transfer to do what he proposes. Generally, sufficient evidence of such right is found in the possession of legal title to the stock. Yet it is well settled that it is not in all cases sufficient, notwithstanding that the true equitable ownership may be in some other than the holder of the legal right, and a transfer may be a gross wrong to such an equitable owner. To that wrong the corporation or keepers of the register make themselves parties, if, with knowledge that there is no equitable right to transfer, they permit it to be done. And, in equity, whatever puts a party upon inquiry is notice of what inquiry must reveal. The real difficulty is in determining how far it is the duty of the transferer to inquire. *Bayard v. Bank,* 52 Pa. St., 232, quoted in *Tafft v. R. R.,* 84 Cal., 131.

Our Court lays down the same doctrine in the *Cox case,* as follows: "The rights of stockholders and persons interested in stock are placed by law under the protection of the bank, so far as concerns the transfer on its books. The defendant bank, as a corporation, is made the custodian of the shares of its stockholders, and is clothed with power to protect the rights of every one from unauthorized transfer. It is a trust placed in its hands for the protection of individual interests, as well as its own, and, like every other trustee, it is bound to execute the trust with proper diligence and care, and is responsible for any loss sustained by its negligence or misconduct."

These authorities and others also establish the principle that the corporation, as trustee, owes the duty to the shareholder of care and diligence; that it has the right and it is its duty to make inquiry as to the authority of one asking for a transfer of stock; and that if put on inquiry it has notice of all the inquiry would reveal.

"For the protection of the lawful owner of the shares, the corporation is bound to use reasonable care in the issue of certificates; if by the form of the certificate or otherwise the corporation has notice that the present holder is not the absolute owner, but holds the shares by such a title that he may not have authority to transfer them, the corporation is not obliged, without evidence of such authority, to issue a certificate

to his assignee; and if, without making any inquiry, it does issue a new certificate, and the rightful owner is injured by its negligence and wrongful act, the corporation is liable without proof of fraud and collusion." *Loring v. Salisbury Mills,* 125 Mass., 150.

"The fact that stock is assigned by one other than the person to whom it was issued devolves upon a corporation, when called upon to transfer the shares and issue a new certificate, the duty of inquiry as to the power of the assignor to make the assignment." *Smith v. R. R.* (Tenn.), 18 S. W., 547.

If, therefore, an agent makes demand on the corporation for a transfer of stock it must look to the power of attorney; if an administrator, to his letters; and if an executor, to the will, because these are the sources of power; and in the case of an executor, as it is its duty to make inquiry, it is fixed with knowledge of the contents of the will.

"Knowledge of the contents of a will on the part of a corporation is presumed by law from its knowledge of the fact that there is a will upon the terms of which the title to its stock is made to depend. A corporation whose stock, as in this case, transferable only on the books of the company is made the custodian of the shares, and is clothed with power to protect the rights of shareholders from unauthorized transfers. With this power there exists the duty that rests on all trustees: to protect, so far as the exercise of proper diligence and care can do so, the interests of the *cestui que trust;* and it must respond in damages for any injury sustained in consequence of its negligence or misconduct." *Caulkins v. Gas Light Co.,* 4 A. S. R., 794 (85 Tenn., 683).

"In *Stewart's case,* 53 Md., 575, the Court says: 'The fact that Simms and Tyson, in making these transfers, professed to act as executors of Johnson, the deceased stockholder, gave the company or its officers, to whom superintendence of transfers was committed, actual notice that Johnson left a will which was open to inspection upon the public record, and made the company chargeable to the same extent as if such officers had actually read it and thereby made themselves acquainted with its contents. The company, therefore, must be dealt with as if it had actual knowledge of the provisions of that will at the time the first transfer was proposed to be made. This proposition was expressly decided by *Chief Justice Taney* in the case of *Lowry v. The Commercial and Farmers Bank,* Taney 310.' This decision by *Judge Taney* has been adopted throughout the country now as the law, and is the leading case on the subject." *Marbury v. Ehlen,* 72 Md., 206.

"The fact that the proposed transfer was to be made by an executrix was notice of the existence of the will. An examination of the will, the production of which, or a certified copy of the record of which, he

24—173

could have required, would have disclosed the true state of the title to the stock. It was negligence in him to rely upon the statement of Whitaker as to the ownership, instead of consulting the will, and if loss is to result it should be borne by the bank, whose agent he was, and not by the complainants." *Peck v. Bank* (R. I.), 7 L. R. A., 831.

"After mature consideration of all the cases cited and the text in the law books to which our attention has been called, our opinion is: First, that where a transfer of stock of a corporation is made on its books by an executor, the corporation is fixed with a knowledge that there is a will, and is chargeable with a knowledge of its contents to the same extent as if the officers had actually read it." *Wooten v. R. R.,* 128 N. C., 126.

The defendant not only had notice that there was a will and of its contents at the time of the transfer to the two legatees, but also that the transfer was not being made in the ordinary course of administration for the purpose of procuring assets with which to pay debts.

This appears from the fact that the executor did not have an order of sale, which is required by our statute (Rev., sec. 64), and because the transfer was made to the legatees named in the will.

This question was dealt with in *Weyer v. Bank,* 57 Ind., 209, in which an administrator *de bonis non c. t. a.* recovered the value of certain stock from a corporation because it had permitted a transfer at the request of an executor, without requiring him to produce an order of court authorizing the sale, in which the Court says: "At common law an executor or administrator had the same property in and, of course, the same powers over the personal effects or estate of his decedent that such decedent had at and before his death. . . . The power to sell the personal property of the decedent still exists in the executor or administrator, but the modes of sale and the power to sell are given and prescribed by statute. . . . For the reasons given, we hold that section 60 of the act providing for the settlement of decedents' estates, etc., is mandatory in its provisions and that an executor or administrator cannot sell the personal property of his decedent, or any part thereof, at private sale without having been authorized so to do by an order of the court having jurisdiction of the administration of his decedent's estate. . . . The appellees in this case were bound to know that the executor of Mrs. Shippen could not make a valid and legal sale and transfer of said stock at private sale until he had been first authorized so to do by an order of the proper court; for such is the law of this State, which citizens, individuals and corporate, are conclusively presumed to know."

"Where by statute executor's, sales are to be at public auction, the corporation is bound to ascertain whether the statute was complied with, and is liable for allowing the registry when the sale was a private one." Cook Corp., vol. 1, sec. 330.

It is also accepted that notice to the officers of corporations is notice to the corporations, and that no subsequent change of office requires new notice of the facts (*Bank v. Seton,* 1 Pet., 309), which principle was applied in *Robinson v. B. of L. F. and E.,* 170 N. C., 546, so as to affect the defendant with notice, at the time of issuing a policy of insurance in 1907, of the contents of an application for insurance filed with the company in 1891.

Applying these principles to the facts agreed, the defendant knew when it issued the shares of stock to John and Jesse Baker in 1857 that each had an interest in the stock which would be defeated upon his dying without issue, and subsequently, in 1866, when at the request of John Baker it issued the four shares to John I. Proctor, it knew that John Baker was then alive; that if he died without issue the plaintiffs in this action would be entitled to the stock it was then issuing, and that the transfer absolutely and without any restrictions would defeat the rights of the plaintiffs unless it, the defendant, was held liable in damages.

This is a clear breach of duty and a failure to exercise ordinary care and diligence, for which the defendant must be held responsible.

If it be conceded that the executor had the right in the first instance to have the stock transferred to the owners of the defeasible estate, this does not affect the question of liability, as the wrong done to the plaintiffs, which caused the loss of their stock, was in permitting and aiding in the sale to Proctor, when the defendant knew, in law, that the seller did not have an absolute estate, and that if he died without issue the stock would belong to the plaintiffs.

When it is once established that the corporation has notice of the contents of the will when a transfer is made by an executor, the case of *Cox v. Bank,* 119 N. C., 302, is almost directly in point on every question raised by the appeal, and that case is strongly supported by the subsequent case of *Wooten v. R. R.,* 128 N. C., 119, which differs from this and the *Cox case* in that the stock transferred in the *Wooten case* stood on the books of the company in the name of a trustee.

The Court says in the *Cox case;* "The case, then, is this: On the one hand, the original stock stood on the books in the name of the testator, with actual knowledge of the contents of the will, wherein this stock was directed to be held by trustees for successive parties, including said Frances for life; and about two years after the testator's death said

life tenant presented said stock to the bank and demanded new certificates for the absolute interest in the original stock. On the other hand, the bank officer sees on the back of the certificate what is in form, and purports to be, a sale for value, signed by the executor, one of whom is one of the trustees appointed in the will. We are led to the conclusion that a prudent business man with these facts before him would have made further inquiry, which was easily done by looking at the executors' returns in the clerk's office, or by asking the executors themselves, or by simply asking the life tenant, Frances, when she demanded new stock at the counter of the bank, what was the truth of the matter. But nothing of this kind was done. We think, therefore, that the defendant and its officers were negligent in this respect, and are liable for the loss of the plaintiff in consequence thereof."

The case of *Albert v. Bank,* 2 Md., 159, if opposed to the conclusion reached by us, would be overruled by the later decisions of that Court; but there is no conflict, because in that case the stock in controversy did not belong to the testator, but was bought by the executor, and was of course not referred to in the will.

Nor does *Smith v. R. R.,* 91 Tenn., 221, which is the only authority cited by the learned author of Cook on Corporations (vol. 1, sec. 330) in support of the statement that the corporation is not affected with notice of the contents of a will when the transfer is made by an execuor, justify that conclusion, because in the *Smith case* the transfer was made by an administrator, and there is clear intimation in the opinion that if he had added *"cum testamento annexo"* to his signature, which was his true position, that the corporation would have been held to have knowledge of the will and its contents, which is the doctrine of the earlier case of *Caulkins v. Gas Light Co.,* 85 Tenn., 683.

This ruling imposes no burden on the corporation, because it can require the production of the will and may issue a new certificate under its provisions, which will protect it and others interested in the stock, while a contrary holding would enable the corporation and the executor to defeat the will of the testator and to destroy the property rights of legatees.

The defense of the statute of limitations cannot avail the defendant, as was decided in the *Wooten case, supra.*

The plaintiffs are not suing for a conversion, but they are demanding their stock or its value, and their right did not accrue until the death of John Baker, which was within less than three years before action brought.

Affirmed.